## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

E.R., through his mother and legal
guardian SHERRY GAINES,
individually and on behalf of all others
similarly situated,

            Plaintiff,

  vs.

NATIONAL WILDLIFE FEDERATION,

            Defendant.

    )
    )
    )
    )
    )   Case No. 5:22-cv-11173-JEL-CI
    )
    )
    )
    )   Hon. Judith E. Levy
    )
    )
    )

## DEFENDANT NATIONAL WILDLIFE FEDERATION'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant National Wildlife Federation ("NWF") respectfully moves this Court to dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiff lacks standing, fails to state a claim, and seeks relief for time-barred claims.

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on August 18, 2022, they communicated to Plaintiff's counsel, explaining the nature of the relief sought in this Motion and seeking concurrence in that relief. Plaintiff's counsel indicated that Plaintiff would oppose this Motion.

#3387260

Dated: August 19, 2022                    Respectfully submitted,


                                          /s/ *Kristen C. Rodriguez*
                                          DENTONS US LLP
                                          Kristen C. Rodriguez (ARDC 6300697)
                                          233 S. Wacker Drive, Suite 5900
                                          Chicago, IL 60606-6404
                                          Tel: (312) 876-8000
                                          kristen.rodriguez@dentons.com


                                          CLARK HILL PLC
                                          Peter B. Kupelian (P31812)
                                          Carol G. Schley (P51301)
                                          151 South Old Woodward Avenue,
                                          Suite 200
                                          Birmingham, MI 48009
                                          Tel: (248) 530-6336
                                          pkupelian@clarkhill.com
                                          cschley@clarkhill.com

                                          *Counsel for Defendant*,
                                          *National Wildlife Federation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| E.R., through his mother and legal guardian SHERRY GAINES, individually and on behalf of all others similarly situated, | **)** **)** **)** **)** | |
| Plaintiff, | **)** | Case No. 5:22-cv-11173-JEL-CI |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| NATIONAL WILDLIFE FEDERATION, | **)** | Hon. Judith E. Levy |
| | **)** | |
| | **)** | |
| Defendant. | **)** | |

## BRIEF IN SUPPORT OF DEFENDANT NATIONAL WILDLIFE FEDERATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ...................................................................ii

STATEMENT OF ISSUES PRESENTED.................................................1

STATEMENT OF CONTROLLING AUTHORITY .................................2

INTRODUCTION .................................................................................3

STATEMENT OF FACTS .....................................................................5

     I.     Plaintiff Admits That He Did Not Purchase *Ranger Rick* Magazine. ........................................................................... 5

     II.    Plaintiff Makes Conclusory Allegations of PPPA Violations. ............ 5

     III.   The Michigan PPPA Protects Against the Invasion of Customer's  Privacy. ............................................................ 7

ARGUMENT ......................................................................................9

     I.     Plaintiff Lacks Standing to Sue.......................................... 9

     II.    Plaintiff Fails to State a Claim. ......................................... 12

     III.   Plaintiff's Claims Are Time Barred. ................................... 17

     IV.   Plaintiff's Claims Should Be Dismissed with Prejudice ................... 20

CONCLUSION ...................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arent v. Hatch*,
349 N.W.2d 536 (Mich. Ct. App. 1984)...............................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................12, 13

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
*569 F. App'x 438, 443 (6th Cir. 2014)* ...........................................................20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 545 (2007)...................................................................................12

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) .............................................................................15

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ..........................................................18, 19

*In re Certified Question from U.S. Ct. of Appeals for Ninth Cir.*
*(Deacon v. Pandora Media, Inc.)*,
885 N.W.2d 628 (Mich. 2016)...................................................................7, 10, 11

*Coulter-Owens v. Time Inc*.,
695 Fed. App'x 117 (6th Cir. 2017) .....................................................................9

*Curney v. City of Highland Park*,
No. 11-12083, 2012 WL 1079473 (E.D. Mich. Mar. 30, 2012)........................15

*Dabish v. McMahon*,
818 F. App'x 423 (6th Cir. 2020).......................................................................20

*Derderian v. Genesys Health Care Sys*.,
689 N.W.2d 145 (Mich. Ct. App. 2004)............................................................17

*Edwards v. Hearst Commc'ns, Inc.*,
No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) .........................18

ii

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) ...............................................................................15

*Frame v. Nehls*,
    550 N.W.2d 739 (Mich. 1996)...........................................................................18

*Green v. Lansing Automakers Fed. Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ....................17

*Hall v. Farm Journal, Inc.*,
    No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022)...................................19

*Huggett v. Dep't of Nat. Res.*,
    629 N.W.2d 915 (Mich. 2001).............................................................................10

*Krassick v. Archaeological Inst. of Am.*,
    No. 2:21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022)...................19

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ..............................................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)............................................................................................10

*Long v. Insight Commc'ns of Cent. Ohio, LLC*,
    804 F.3d 791 (6th Cir. 2015) ..............................................................................15

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) ..............................................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................11

*Markham v. Nat'l Geographic Partners, LLC*,
    No. 1:19-cv-00232 (W.D. Mich.) .......................................................................19

*Marks v. Hulstrom*,
    No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010).....................20

*McCree v. Cont'l Mgmt., LLC*,
    No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021).....................20

*Michigan Emp. Sec. Comm'n v. Westphal*,
    542 N.W.2d 360 (Mich. Ct. App. 1995)...........................................................18

*Mitchell v. City of Warren*,
    No. 16-CV-10567, 2016 WL 3137846 (E.D. Mich. June 6, 2016)....................15

*Nashel v. The New York Times*,
    Case No. 2:22-cv-10633-SJM-DRG, ECF No. 21 (E.D. Mich. July
    26, 2022). .........................................................................................................20

*Ott v. Midland-Ross Corp*.,
    523 F.2d 1367 (6th Cir. 1975) .........................................................................17

*Pratt v. KSE Sportsman Media, Inc.*,
    No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) ................19

*Rentola v. Dow Jones & Co., Inc*.,
    No. 4:20-cv-11589, 2017 WL 4838016 (E.D. Mich.) .......................................19

*Roberts v. Hamer*,
    655 F.3d 578 (6th Cir. 2011) .....................................................................10, 11

*Wheaton v. Apple Inc.*,
    No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25,
    2019) ................................................................................................................16

**Statutes**

28 United States Code
    § 1332(d)............................................................................................................7

Michigan Compiled Laws
    § 445.1711 (1989)................................................................................3, 7, 10, 11
    § 445.1711, *et seq.* (2016)...................................................................................9
    § 445.1712 (1989)...............................................................................3, 7, 8, 13
    § 445.1715 (1989)................................................................................3, 7, 8, 9
    § 445.1715(2) (2016) ...........................................................................................9
    § 600.2940(1)....................................................................................................20
    § 600.5805(2).....................................................................................17, 18, 19, 20
    § 600.5813.....................................................................................................18, 19
    § 750.147b.........................................................................................................20

Michigan Public Acts of 1988
   No. 378.................................................................................................8

**Rules and Regulations**

Federal Rules of Civil Procedure
   Rule 12(b)(1)......................................................................................12
   Rule 12(b)(6).............................................................................3, 12, 17

Michigan Court Rules
   Rule 3.501(A)(5)..................................................................................7

## STATEMENT OF ISSUES PRESENTED

1.      Whether Plaintiff's claims under the Michigan Preservation of Personal Privacy Act ("PPPA") should be dismissed because the allegations in the Complaint establish that Plaintiff is not a "customer" as defined by the PPPA, and therefore, lacks standing to sue under the PPPA?

Defendant's Answer: YES

2.      Whether Plaintiff's claims under the Michigan PPPA should be dismissed because Plaintiff fails to plausibly allege that Defendant unlawfully disclosed his personally identifying information in violation of the PPPA?

Defendant's Answer: YES.

3.      Whether Plaintiff's claims under the Michigan PPPA are time-barred by the three-year statute of limitations in M.C.L. § 600.5805(2), which is the limitations period traditionally recognized under common law for the invasion of privacy claims alleged here?

Defendant's Answer: YES.

1

## STATEMENT OF CONTROLLING AUTHORITY

The controlling authority for this Motion includes:

1. Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

2. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4. M.C.L. § 600.5805(2).

5. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

6. *In re Certified Question from U.S. Ct. of Appeals for Ninth Cir. (Deacon v. Pandora Media, Inc.)*, 885 N.W.2d 628 (Mich. 2016).

7. *Roberts v. Hamer*, 655 F.3d 578 (6th Cir. 2011).

8. *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022).

9. *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

10. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

11. *Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019).

122149187\V-2

## INTRODUCTION

Plaintiff E.R. alleges that National Wildlife Federation ("NWF") wrongfully disclosed his "Private Reading Information" ("PRI") during a two-month period in 2016, in purported violation of Michigan's Preservation of Personal Privacy Act (the "PPPA"). But the PPPA only allows "customers"—those "who purchase[d], rent[ed], or borrow[ed]" a publication—to seek relief. M.C.L. §§ 445.1711(a), 445.1715 (1989). E.R., a minor, concedes on the face of the Complaint that he did none of these things. (Compl. ¶¶ 58, 59.) Instead, as alleged, E.R.'s *mother* purchased an NWF publication. Under well-settled law, E.R. lacks standing to pursue any claims against NWF. The Court can and should dismiss the Complaint on this basis alone.

Separate and apart from Plaintiff's lack of standing, the Complaint consists of nothing more than vague and conclusory allegations that fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials "by a customer that indicates the identity of the customer." M.C.L. § 445.1712 (1989). The Complaint contains no allegations about the actual disclosure of any customer's information, let alone E.R.'s information. There are no allegations about which customers' information was supposedly disclosed or to whom, or when that disclosure purportedly occurred, or that any such disclosures actually contained

information indicating E.R.'s identity. None of Plaintiff's allegations create a plausible inference—as they must to avoid dismissal—that NWF wrongfully disclosed anyone's PRI at any time, much less E.R.'s.

Notably, this case is part of a deluge of PPPA class actions filed recently by the same counsel as here, all of which attempt to claim statutory damages under the pre-July 31, 2016 version of the PPPA, which included a $5,000 statutory penalty that the Michigan Legislature has since removed. Plaintiff's May 30, 2022 blunderbuss pleading was an attempt to preserve a claim to statutory damages that, under Plaintiff's view, was going to expire on July 30, 2022. But his filing was for naught because the statute of limitations on his claim expired over three years ago. Although the PPPA does not contain an express limitations period, under Michigan law, claims grounded in personal injury and common law torts, like those under the PPPA, are subject to a three-year limitations period, not the six-year "catch-all" period asserted by Plaintiff. Accordingly, any claim under the pre-July 31, 2016 version of the PPPA expired on July 30, 2019. Plaintiff's Complaint not only alleges "too little," it is also "too late."

Accordingly, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.   Plaintiff Admits That He Did Not Purchase *Ranger Rick* Magazine.

E.R. concedes that he did not purchase an NWF publication. The Complaint plays fast and loose on this point, by alleging that "Plaintiff was a subscriber to *Ranger Rick* magazine" (Compl. ¶ 9), but "Plaintiff" is defined collectively as "E.R., through his mother and legal guardian, Sherry Gaines."  (*Id.*, Opening Paragraph.) The purchase of the magazine, if there was one, was made by E.R.'s mother, not by E.R., as Plaintiff admits later in the Complaint: "By purchasing a subscription to *Ranger Rick* magazine, Plaintiff E.R., *by and through his mother and legal guardian Sherry Gaines*, purchased written materials directly from NWF." (*Id.* ¶ 58.) (Emphasis added.)  E.R. then alleges that he is a "customer" under the PPPA because "E.R., *by and through his mother and legal guardian Sherry Gaines*, purchased written materials directly from NWF". (*Id.* ¶ 59.) (Emphasis added.)  E.R. thus admits that he himself did not purchase *Ranger Rick*, and his legal conclusion that he somehow is a "customer" under the PPPA is wrong, as discussed below.

### II.   Plaintiff Makes Conclusory Allegations of PPPA Violations.

Plaintiff broadly and baldly claims that NWF "rented, exchanged, and/or otherwise disclosed detailed information" about its customers' "Private Reading Information," *i.e.*, names, home addresses, and the titles of publications subscribed

to, to third parties without consent or notice, and that such alleged disclosures violated the PPPA. (*Id.* ¶¶ 1, 5, 9.)

Plaintiff offers no facts whatsoever to support his sweeping allegations that NWF disclosed identifying information about any customer—much less Plaintiff—at any time—let alone during the relevant pre-July 31, 2016 timeframe. While Plaintiff alleges that he has "[d]ocumented evidence" that NWF "rented, exchanged, and/or otherwise disclosed" the Plaintiff's Private Reading Information prior to July 31, 2016 (*id.* ¶ 1-2), that "evidence" is a NextMark, Inc. ("NextMark") data card regarding accounts through March 1, 2022. (*Id.* ¶ 2, Ex. A.)

E.R. seeks to represent a class of all Michigan residents who allegedly had their PRI disclosed to third parties by NWF without their consent prior to July 31, 2016. (*Id.* ¶ 49.)  Plaintiff's allegations and those of the putative class are brought under the pre-July 31, 2016 version of the PPPA in order to take advantage of the $5,000 statutory penalty available under that version of the statute, meet the aggregate amount necessary for federal jurisdiction (because this putative class action is not allowed in Michigan state court),[1] and avoid the obligation to plead each class member's actual damages.

---

[1] Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. To circumvent this prohibition, Plaintiff seeks to invoke federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*See* Compl. ¶ 11.)

Moreover, as discussed below, Plaintiff contends that his claims fall under a six-year statute of limitations. (*See id.*, ¶ 1 n.1) Applying Plaintiff's view as to the statute of limitations, the relevant time period for Plaintiff's claims, and any claims of a putative class, is May 30, 2016 (based on a filing date of May 30, 2022) through July 30, 2016.

### III.    The Michigan PPPA Protects Against the Invasion of Customers' Privacy.

There can be no doubt that the PPPA was designed to protect customers' right to privacy in their own media consumption. The Michigan state legislature passed the PPPA in 1988 to address concerns related to what it described as an "unwarranted invasion of privacy". *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to Compl. as Ex. B, ECF 1-3, PageID.31).

But the PPPA includes important limitations. "Only a 'customer'"— statutorily-defined as "a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording"—"may bring a civil action for a violation of the PPPA." *In re Certified Question from U.S. Ct. of Appeals for Ninth Cir. (Deacon v. Pandora Media, Inc.)*, 885 N.W.2d 628, 631 (Mich. 2016); M.C.L. §§ 445.1711(a), 445.1715. And the PPPA only proscribes the unauthorized disclosure of information "that *indicates the identity* of the customer." M.C.L. § 445.1712 (emphasis added).

Moreover, the privacy interest the PPPA serves is a specific one: an individual customer's interest in preventing others from learning what she watches, listens to, or reads. *See* 1988 Mich. Pub. Act No. 378 (PPPA is "[a]n act to preserve personal privacy with respect to *the purchase, rental, or borrowing* of certain materials; and to provide penalties and remedies for violation of this act.") (Emphasis added).

The Michigan Legislature passed the PPPA in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. (Compl. Ex. B.)  However, Michigan's law went further than the federal Act. (*Id.*) In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials."  M.C.L. § 445.1712.

The Michigan statute sat on the books largely uninvoked for nearly 30 years until plaintiffs' counsel started bringing a series of class actions against magazine publishers over "direct marketing" mailing practices. The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater.  M.C.L. § 445.1715 (1989) (amended, eff. July 31, 2016). Not surprisingly, the prior PPPA class action suits (filed against publishers by the same plaintiffs' lawyers here, in or around 2015)

122149187\V-2

elected to pursue the statutory damages of $5,000 per subscriber in lieu of seeking actual damages, threatening *in terrorem* class action damages.

In the wake of these potentially crippling class action lawsuits, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment").[2] Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages, and in its place, provided only for actual damages. *See* MCL § 445.1715(2) (2016). The 2016 Amendment took effect July 31, 2016.  Thus, July 30, 2016 was the last day the $5,000 statutory damages provision was in place.[3]

## ARGUMENT

## I.   Plaintiff Lacks Standing to Sue.

E.R. does not allege that he personally purchased, borrowed, or rented *Ranger Rick* magazine from NWF, instead relying on his mother's alleged purchase of the magazine to claim that he is a "customer" entitled to relief under the PPPA. (Compl. ¶¶ 58-59.) But he is not a "customer" under the statute and accordingly, lacks standing to sue.

The Michigan Supreme Court has held that "[u]nder MCL 445.1715, only a 'customer' may bring a civil action for a violation of the PPPA." *Certified Question*,

---

[2] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711, *et seq.* (2016)).

[3] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

885 N.W.2d at 631. As used in the PPPA, "'[c]ustomer means a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording." M.C.L. § 445.1711.

The statutory standing inquiry "requires [the Court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). This Court's inquiry begins and ends "with the cardinal rule of statutory interpretation" that clear, unambiguous statutes must be enforced exactly as written. *Roberts v. Hamer*, 655 F.3d 578, 582–83 (6th Cir. 2011) citing *Caminetti v. U.S.*, 242 U.S. 470, 485 (1917)); *Huggett v. Dep't of Nat. Res.*, 629 N.W.2d 915, 919 (Mich. 2001) ("If the statutory language is clear and unambiguous…the statute is enforced as written. No further judicial construction is necessary or permitted.")

Here, because Plaintiff admittedly never "purchase[d], rent[ed], or borrow[ed]" any magazines from NWF, he does not have statutory standing to bring this claim. *See Roberts*, 655 F.3d at 583 (6th Cir. 2011) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6–7 (2000)) (citation and punctuation omitted in original) (emphasis added) ("'Where a statute names the parties granted the right to invoke its provisions, such parties *only* may act.'"); *Certified Question*, 885 N.W.2d at 631, n.10 ("plaintiff was not a 'customer'

as defined by MCL 445.1711(a) because he neither 'rent [ed]' nor 'borrow[ed]'" nor attempted to "argue that he 'purchase[d]'" the materials at issue).

If the Michigan Legislature wanted to allow purchasers' children to sue under the PPPA, it would have included them in its definition of "customer."  But it did not do so, and E.R. thus does not have standing to sue as a customer even if, as pled, his mother purchased a *Ranger Rick* subscription for him.  Indeed, in an analogous case, *Roberts v. Hamer*, the Sixth Circuit expressly rejected the argument that children who were "neither purchasers nor lessees," as required by the relevant statute in that case, could sue for relief under that statute. 655 F.3d at 582-83.

Because Plaintiff does not have statutory standing, he also lacks Article III standing to pursue his claim under the PPPA. In order to establish his right to be before this Court, it is Plaintiff's burden to show, among other things, that he has suffered a concrete injury traceable to Defendant's actions. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiff's only claim is that he has suffered a statutory injury, but under a statute which does not apply to him. *Cf. id.* at 560, 578. Accordingly, there is no "case or controversy" under Article III and the Court must dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1).  *See, e.g., Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

11

## II.     Plaintiff Fails to State a Claim.

Even if E.R. had standing (which he does not), under Federal Rule of Civil

Procedure 12(b)(6), the Court must dismiss his Complaint because it still fails to

state a claim upon which relief can be granted. To survive a motion to dismiss,

Plaintiff must allege facially plausible facts surrounding his claims that NWF is

liable under the PPPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id. See also Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 545 (2007) ("a formulaic recitation of a cause of action's elements

will not do").  In other words, a plaintiff's "factual allegations, assumed to be true,

must do more than create speculation or suspicion of a legally cognizable cause of

action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens*

*v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

Here, the Complaint is devoid of any facts supporting Plaintiff's allegations

that NWF unlawfully disclosed his PRI in violation of the PPPA. To plead a claim

under the PPPA, a plaintiff must allege facts that, if proved, would show both that

(i) the defendant disclosed the relevant information about the plaintiff without the

plaintiff's consent, and (ii) the information specifically identified the plaintiff to the

party receiving that information. M.C.L. § 445.1712 (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer.").

But Plaintiff's PPPA claims are based entirely on the broad and conclusory allegation that NWF disclosed subscriber names and addresses to "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period." (Compl. ¶ 1.)  Plaintiff alleges no facts beyond this barebones statement, thus failing to provide sufficient allegations from which this Court could draw a plausible inference that NWF is liable for the misconduct alleged. *See Ashcroft*, 556 U.S. at 678.

Plaintiff fails to identify to whom his information was disclosed, how that disclosure took place, or even if that disclosure took place during the claimed relevant time period of May 30, 2016 to July 30, 2016. (*See* Compl. ¶ 1 n.1.) Instead, the Complaint rests entirely on conclusory allegations about disclosure. (*Id.* at ¶¶ 1, 3, 5-6, 8-9, 14-15, 17-49, 52, 60-66, 69-73.) Notably, the vast majority of the Complaint does nothing more than recite the history of the PPPA and the comparable Video Privacy Protection Act and provide general information concerning the "private information market." (*Id.* at ¶¶ 14-15, 17-20, 22-29, 34-40.) These general historical statements include no allegations whatsoever about NWF and thus fail to advance Plaintiffs' claims.

13

Nor does Plaintiff's so-called "[d]ocumented evidence" of NWF's PPPA violations create a plausible inference that NWF violated the PPPA before July 31, 2016. (*Id.* ¶ 2; Ex. A.) The NextMark data card upon which he relies presents no information as to any time prior to the date listed on the screenshot: March 1, 2022. At most, the data card shows that after March 1, 2022—nearly *six years* after any alleged statutory violation—a third party, NextMark, offered to sell certain information about some of NWF's active subscribers. (*Id.*) Notably, to the extent the data card is at all relevant, it shows that identifying information was "slugged," meaning deleted, so that the subscriber's name is not associated with the subscribed-to publication. (Compl. ¶ 2, Ex. A.) ("Ranger Rick masterfile SUBSCRIBER names are provided TITLE SLUGGED only, "To the ____ Family".) Thus, the data card cannot support Plaintiff's claims, and no plausible inference can be drawn from it that NWF released his data—or anyone else's—in 2016.[4]

Without factual allegations "facially support[ing] the conclusion" that his personal information was wrongfully disclosed to a third party, Plaintiff has not pled the requirements for a claim under the PPPA. *Bishop v. Lucent Techs., Inc.*, 520 F.3d

---

[4] Plaintiff appears to have filed this lawsuit in hopes he can unveil a claim against NWF during the discovery process. But "[a] lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant." *Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, at *5 (E.D. Mich. Mar. 30, 2012). *See also Mitchell v. City of Warren*, No. 16-CV-10567, 2016 WL 3137846, at *7 (E.D. Mich. June 6, 2016) (citation omitted).

516, 520 (6th Cir. 2008). Federal courts routinely dismiss privacy claims when plaintiffs only plead conclusory statements instead of actual facts that would support those claims. For example, in *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022), the Sixth Circuit affirmed dismissal of a claim for public disclosure of private facts, which requires an actual disclosure of information. The plaintiff in *Fisher* made only conclusory allegations that his personal information had been disclosed. The Sixth Circuit found that those bare allegations did "not allege when these disclosures occurred, who the [information was disclosed to], or whether [the disclosure] contained private information." *Id.* at 297. The court concluded that those "conclusory allegations [were] insufficient to allege a disclosure." *Id. See also Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 792 (6th Cir. 2015) (affirming dismissal of a claim under the Stored Communications Act because plaintiffs failed to plead facts supporting an essential element: that the defendant knowingly or intentionally divulged plaintiffs' information).

In another action alleging claims under the Michigan PPPA brought by the same lawyers as here, the court dismissed a similar complaint against Apple for failure to plead plausible facts supporting its PPPA claim. *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), attached hereto as Exhibit 1. Akin to the Complaint against NWF, the *Wheaton* plaintiffs claimed that "to supplement its revenues," Apple "rents, transmits, or otherwise discloses"

its customers' private information "to data aggregators, data miners, data brokers, data appenders, and other third parties." *Compare Wheaton v. Apple Inc.*, No. C 19-02883 WHA (N.D. Cal.), Compl. ECF 1, attached hereto as Exhibit 2, ¶¶ 3, 6, 47 *with* Compl. ¶¶ 1-3, 5-6, 9, 60-65, 71.

The *Wheaton* court dismissed the plaintiffs' PPPA claim because "[t]he complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the screenshots of data cards that the complaint depended on "d[id] not show that Apple disclosed customers' personal listening information." 2019 WL 5536214, at *5. The same result should follow here.

Plaintiff has not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (quoting *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). His claim must be dismissed under Rule 12(b)(6).

## III.   Plaintiff's Claims Are Time Barred.

Should the Court find that Plaintiff has standing and has sufficiently alleged his claims (which it should not), Plaintiff's claims should be dismissed under Rule 12(b)(6) as untimely. *See Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975). Because Plaintiff's claims are for personal injuries resulting from an invasion

122149187\V-2

of privacy, his claims are subject to the three-year statute of limitations in MCL §
600.5805(2), not the six-year period that Plaintiff alleges. (Compl. ¶ 1 n.1)

M.C.L. § 600.5805(2) provides that "the period of limitations is 3 years after
the time of the death or injury for *all* actions to recover damages for the death of a
person or for injury to a person or property." Michigan courts consistently apply
Section 600.5805(2)'s three-year statute of limitations to common law privacy-based
claims. *See, e.g., Green v. Lansing Automakers Fed. Credit Union*,
No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (three-year
limitation period applied to invasion of privacy, unlawful intrusion claim);
*Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App.
2004) (three-year limitations period applied to invasion of privacy, false-light
claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year
limitations period applied to invasion of privacy claim).

Plaintiff will nonetheless argue that a PPPA claim should be subject to the
catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does
not contain an express limitations period. (*See* Compl. at ¶ 1 n.1.)  Section 600.5813
provides: "All other personal actions shall be commenced within the period of 6
years after the claims accrue and not afterwards unless a different period is stated in
the statutes."

However, Michigan law is clear that when two potentially applicable Michigan statutes of limitations are at issue, the more specific statute of limitations should control. *See e.g., Michigan Emp. Sec. Comm'n v. Westphal*, 542 N.W.2d 360, 362 (Mich. Ct. App. 1995); *Frame v. Nehls*, 550 N.W.2d 739, 741, n.3 (Mich. 1996). Here, the more specific three-year statute of limitations for personal injury should control, and Plaintiff's claims are therefore time-barred.

Other federal courts outside of this District have applied Section 600.5805(2)'s three-year limitations period to PPPA claims. *See Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017). Notably, even Plaintiff's counsel here took the position in prior PPPA suits that the PPPA was subject to a three-year statute of limitations pursuant to M.C.L. § 600.5805(2).[5]

However, two judges in this District and one judge in the Western District of Michigan recently found that the "catch all" six-year limitations period under M.C.L.

---

[5] *See Markham v. Nat'l Geographic Partners, LLC*, No. 1:19-cv-00232, (W.D. Mich.), ECF 26 (arguing for tolling of the three-year limitations period); *Rentola v. Dow Jones & Co., Inc.*, No. 4:20-cv-11589 (E.D. Mich.), ECF 12 at PageID.196 ("Claims under the [PPPA] are subject to a 'three year statute of limitations.'"); *Boelter v. Hearst*, Plaintiffs' Memo., 2017 WL 4838016 (section heading supporting tolling of a *three-year statute of limitations*: "HEARST'S ARGUMENT THAT THERE IS NO BASIS TO TOLL THE THREE-YEAR STATUTE OF LIMITATIONS IS WRONG").

§ 600.5813 applies to PPPA claims. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.) slip op., attached hereto as Exhibit 3; and *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.). These cases hold that the six-year statute of limitations always applies to statutory causes of actions unless the relevant statute contains its own, specific statutory limitations period. *Pratt,* 2022 WL 469075, at *12; *Hall*, No. 2:21-cv-11811, slip. op. at PageID.714-16; *Krassick*, 2022 WL 2071730, at *3-5.

But that cannot be correct, as there are decades of Michigan cases that have applied the three-year limitations in Section 600.5805(2) to statutory claims that allege injury to persons, even when the statute was otherwise silent on a limitations period. *See e.g.*, *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act); *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir.

2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b).[6]

Here, too, because Plaintiff's claims are for personal injuries resulting from an invasion of privacy, his claims are untimely and his Complaint must be dismissed with prejudice.

## IV.   Plaintiffs' Claims Should Be Dismissed with Prejudice.

Plaintiff's lack of standing cannot be solved through an amended complaint. Nor would another complaint solve his statute of limitations problem. The Complaint should be dismissed with prejudice. *See, e.g.*, *Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014).

---

[6] Another defendant in another case in this District recently moved to certify the question of the applicable limitations period to the Michigan Supreme Court. *See Nashel v. The New York Times*, Case No. 2:22-cv-10633-SJM-DRG, ECF No. 21 (E.D. Mich. July 26, 2022).

122149187\V-2

## CONCLUSION

For the foregoing reasons, NWF respectfully requests that the Complaint be dismissed with prejudice.


Date: August 19, 2022                    Respectfully submitted,

                                         /s/ *Kristen C. Rodriguez*
                                         DENTONS US LLP
                                         Kristen C. Rodriguez
                                         233 S. Wacker Drive, Suite 5900
                                         Chicago, IL 60606-6404
                                         Tel: (312) 876-8000
                                         kristen.rodriguez@dentons.com

                                         CLARK HILL PLC
                                         Peter B. Kupelian (P31812)
                                         Carol G. Schley (P51301)
                                         151 South Old Woodward Avenue,
                                         Suite 200
                                         Birmingham, MI 48009
                                         Tel: (248) 530-6336
                                         pkupelian@clarkhill.com
                                         cschley@clarkhill.com

                                         *Counsel for Defendant*,
                                         *National Wildlife Federation*

122149187\V-2

## **Certificate of Service**

I hereby certify that on August 19, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| E.R., through his mother and legal guardian SHERRY GAINES, individually and on behalf of all others similarly situated, | **)** **)** **)** **)** | |
| Plaintiff, | **)** | Case No. 5:22-cv-11173-JEL-CI |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| NATIONAL WILDLIFE FEDERATION, | **)** | Hon. Judith E. Levy |
| | **)** | |
| | **)** | |
| Defendant. | **)** | |

## INDEX OF EXHIBITS CITED IN DEFENDANT NATIONAL WILDLIFE FEDERATION'S MOTION TO DISMISS COMPLAINT AND <u>MEMORANDUM IN SUPPORT</u>

**Exhibit 1:** Unpublished opinion, *Wheaton v. Apple Inc.,* No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

**Exhibit 2:** Complaint (ECF 1), *Wheaton v. Apple Inc.,* No. C 19-02883 WHA (N.D. Cal.).

**Exhibit 3:** Motion to Dismiss Hearing Transcript, *Hall v. Farm Journal, Inc.,* No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.).