**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| SHERRY GAINES, individually and on behalf of others similarly situated, | **)** | |
| | **)** | |
| | **)** | |
| | **)** | |
| Plaintiff, | **)** | Case No. 5:22-cv-11173-JEL-CI |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| NATIONAL WILDLIFE FEDERATION, | **)** | Hon. Judith E. Levy |
| | **)** | |
| | **)** | |
| Defendant. | **)** | |

## DEFENDANT NATIONAL WILDLIFE FEDERATION'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant National Wildlife Federation ("NWF") respectfully moves this Court to dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice because Plaintiff fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and seeks relief for time-barred claims.

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on October 12, 2022, they communicated to Plaintiff's counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiff's counsel stated that Plaintiff would oppose this Motion.

Dated: October 13, 2022        Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Kristen C. Rodriguez
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel: (312) 876-8000
kristen.rodriguez@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*,
*National Wildlife Federation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

SHERRY GAINES, individually and on
behalf of all others similarly situated,

               Plaintiff,

   vs.

NATIONAL WILDLIFE FEDERATION,

               Defendant.

Case No. 5:22-cv-11173-JEL-CI

Hon. Judith E. Levy

## BRIEF IN SUPPORT OF DEFENDANT NATIONAL WILDLIFE FEDERATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

i

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF ISSUES PRESENTED ................................................ vi

STATEMENT OF CONTROLLING AUTHORITY ............................... vii

INTRODUCTION ......................................................................................1

STATEMENT OF FACTS ..........................................................................2

      I.     The Michigan PPPA Protects Against Invasion of Customers'
           Privacy. ........................................................................................ 2

      II.    Plaintiff Makes Conclusory Allegations of PPPA Violations. ............ 4

ARGUMENT ..............................................................................................5

      I.     Plaintiff Fails to State a Claim. ............................................................ 5

      II.    Plaintiff Has Failed to Plead Facts Supporting the
           Timeliness of Her Claims Under Either a Six- or
           Three-Year Limitations Period. ............................................................ 13

      III.   The Three-Year Limitations Period Should Apply,
           Foreclosing Plaintiff's Claims. ............................................................ 14

      IV.   Dismissal with Prejudice is Warranted. ............................................. 19

CONCLUSION .........................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arent v. Hatch,*
349 N.W.2d 536 (Mich. Ct. App. 1984)............................................................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................5, 6, 8, 12, 13

*Asset Mgmt. One LLC v. U.S. Bank Nat.*
*Ass'n, 569 F. App'x 438, 443 (6th Cir. 2014)* ....................................................19

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 545 (2007)..................................................................6, 13

*Bishop v. Lucent Techs., Inc.,*
520 F.3d 516 (6th Cir. 2008) ...........................................................8, 12

*Boelter v. Hearst Commc'ns, Inc.,*
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ................................................19

*Brewer v. William C. Grossman, PLLC,*
2018 WL 4688944 (E.D. Mich. Sept. 28, 2018) ..............................13

*Coulter-Owens v. Time Inc.,*
695 Fed. App'x 117 (6th Cir. 2017) ...................................................4

*Courser v. Mich. House of Representatives,*
831 F. App'x 161 (6th Cir. 2020)........................................................9

*Dabish v. McMahon,*
818 F. App'x 423 (6th Cir. 2020) .................................................16, 18

*Derderian v. Genesys Health Care Sys.,*
689 N.W.2d 145 (Mich. Ct. App. 2004)..............................................15

*DiPonio Construction Co. v. Rosati Masonry Co.,*
246 Mich. App. 43, 51-52 (2001) .................................................16, 17

*Edwards v. Hearst Commc'ns, Inc.*,
　No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ........................19

*Fisher v. Perron*,
　30 F.4th 289 (6th Cir. 2022) ...............................................................................12

*Frame v. Nehls*,
　550 N.W.2d 739 (Mich. 1996)...........................................................................19

*Green v. Lansing Automakers Fed. Credit Union*,
　No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ....................14

*Hall v. Farm Journal, Inc.*,
　No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) ..................................15

*Krassick v. Archaeological Inst. of Am.*,
　No. 2:21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022).............15, 18

*League of United Latin Am. Citizens v. Bredesen*,
　500 F.3d 523 (6th Cir. 2007) .........................................................................6, 13

*Long v. Insight Commc'ns of Cent. Ohio, LLC*,
　804 F.3d 791 (6th Cir. 2015) .............................................................................12

*Markham v. Nat'l Geographic Partners, LLC*,
　No. 1:19-cv-00232 (W.D. Mich.) .......................................................................19

*Marks v. Hulstrom*,
　No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010).....................16

*McCree v. Cont'l Mgmt., LLC*,
　No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021).....................16

*Michigan Emp. Sec. Comm'n v. Westphal*,
　542 N.W.2d 360 (Mich. Ct. App. 1995)............................................................19

*Nashel v. The New York Times*,
　No. 2:22-cv-10633-SJM-DRG, ECF No. 30
　(E.D. Mich. July 26, 2022). .....................................................2, 7, 9, 11, 15, 18

*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
　878 F.3d 530, 534 (6th Cir. 2017) ....................................................................16

iv

*Pratt v. KSE Sportsman Media, Inc.*,
No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) ................15

*Rentola v. Dow Jones & Co., Inc.*,
No. 4:20-cv-11589, 2017 WL 4838016 (E.D. Mich.) ........................................19

*Wheaton v. Apple Inc.*,
No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25,
2019) ................................................................................................................11

**Statutes**

28 United States Code
§ 1332(d) ..............................................................................................................5

Michigan Compiled Laws
§ 445.1711, *et seq.* ..........................................................................................1, 3
§ 445.1712 (1989)........................................................................................1, 3, 6, 10
§ 445.1715 (1989)...................................................................................................3
§ 600.2940(1).......................................................................................................16
§ 600.5805(2)..............................................................................14, 16, 18, 19
§ 600.5813.....................................................................................................15, 17
§ 750.147b...........................................................................................................16

**Rules and Regulations**

Federal Rule of Civil Procedure
Rule 8 ...........................................................................................................13, 14
Rule 12(b)(6)...........................................................................................................13

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiff's claims under the Michigan Preservation of Personal Privacy Act ("PPPA") should be dismissed because Plaintiff fails to plausibly allege Defendant unlawfully disclosed her information in violation of the PPPA?

Defendant's Answer: YES.

2. Whether Plaintiff has failed to plead an actionable disclosure in violation of the PPPA within any relevant time period?

Defendant's Answer: YES.

3. Whether Plaintiff's claims are untimely in all events?

Defendant's Answer: YES.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(6).

2. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

5. *Nashel v. The New York Times*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30 (E.D. Mich. October 11, 2022).

6. *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

7. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

# INTRODUCTION

Plaintiff Sherry Gaines alleges Defendant National Wildlife Federation ("NWF"), the publisher of the *Ranger Rick* magazine she allegedly purchased, wrongfully disclosed her "Private Reading Information" ("PRI") in purported violation of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq*. (the "PPPA"). After NWF moved to dismiss the initial complaint on multiple grounds, including because the plaintiff named in that action could not state a claim for a violation of the PPPA, Plaintiff filed an amended complaint in an effort to save this action. However, the First Amended Complaint ("FAC") is deficient for three reasons, none of which is capable of being cured by further amendment:

*First*, the FAC consists of nothing more than vague and conclusory allegations, mostly pled on information and belief, that fail to state a claim for a violation of the PPPA. Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of the customer." M.C.L. § 445.1712 (1989). But the FAC contains no specific allegations of the actual disclosure of any customer's information, let alone Plaintiff's information in an unspecified time period prior to July 31, 2016. Significantly, in a substantially similar case in this District, Judge Stephen J. Murphy, III recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, even when the allegations supporting disclosure were more detailed than

1

here. *Nashel v. The New York Times*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30 (E.D. Mich. Oct. 11, 2022), attached hereto as Exhibit 1.

*Second,* Plaintiff urges the Court to apply a six-year statute of limitations in order to avoid having her claim dismissed as time-barred. But even under that limitations period, Plaintiff's claims still fails because she has not pled the date of the alleged disclosure of her PRI. Accordingly, there is no way for the Court to know whether her claim is timely such that she may be entitled to relief as required by Fed. R. Civ. P. 8.

*Third*, despite Plaintiff's likely arguments to the contrary, a PPPA action, as a personal injury action that has common law analog to the invasion of privacy tort, is subject to only a three-year limitations period. Therefore, Plaintiff's claims under the pre-July 31, 2016 version of the statute are untimely and should be dismissed for this reason as well.

For these reasons, the Plaintiff's second attempt to bring a viable action fails, and the FAC should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.   The Michigan PPPA Protects Against the Invasion of Customers' Privacy.

There can be no doubt that the PPPA was designed to protect customers' right to privacy in their own media consumption. The Michigan state legislature passed the PPPA in 1988 to address concerns related to what it described as an

"unwarranted invasion of privacy". *Privacy: Sales, Rentals of Videos, etc.*, House

Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to FAC as

Ex. B, ECF 1-3, PageID.31).

The Michigan Legislature passed the PPPA in the wake of a federal statute,

the "Video Privacy Protection Act," which was enacted following the disclosure of

Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper.

(*Id.*) However, Michigan's law went further than the federal Act. (*Id.*) In addition

to video rental records, its scope includes "books or other written materials,"

proscribing certain "disclosures" of records or information "concerning the

purchase, lease, rental, or borrowing of those materials." M.C.L. § 445.1712.

The allure of class actions under the PPPA was a statutory damages provision

that permitted an action for actual damages *or* $5,000 in statutory damages,

whichever was greater. M.C.L. § 445.1715 (1989) (amended, eff. July 31, 2016).

But in 2016, the Michigan Legislature amended the PPPA in 2016 (the "2016

Amendment").[1] Among other things, the 2016 Amendment expressly removed the

provision for $5,000 statutory damages, and in its place, provided only for actual

damages. MCL § 445.1715(2) (2016). The 2016 Amendment took effect July 31,

---

[1] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at MCL § 445.1711 *et seq.*
(2016)).

3

2016. Thus, July 30, 2016 was the last day the $5,000 statutory damages provision was in place.[2]

## II.    Plaintiff Makes Conclusory Allegations of PPPA Violations.

This action was originally filed by a minor, E.R., who "by and through his mother and legal guardian Sherry Gaines, purchased written materials directly from NWF." (Compl. ¶ 56, 58-59.) NWF moved to dismiss on the basis that E.R. himself admitted that he did not purchase *Ranger Rick* and, therefore, his legal conclusion that he somehow was a "customer," a requirement under the PPPA, was wrong. In response, an amended complaint was filed on September 8, 2022 replacing E.R. as Plaintiff with Sherry Gaines. Her claims are equally inadequate.

In the FAC, Plaintiff broadly and baldly claims NWF "rented, exchanged, and/or otherwise disclosed detailed information" about its customers' "Private Reading Information,"—*i.e.*, names, home addresses, and the "titles of publications subscribed to"—to third parties without consent or notice, and that such alleged disclosures violated the PPPA. (FAC ¶¶ 1, 5, 9.) Plaintiff offers no facts whatsoever to support her sweeping allegations that NWF disclosed identifying information about any customer—much less Plaintiff—at any time—let alone sometime prior to pre-July 31, 2016. While Plaintiff alleges that she has "[d]ocumented evidence" that NWF "rented, exchanged, and/or otherwise

---

[2] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

4

disclosed" the Plaintiff's Private Reading Information prior to July 31, 2016 (*id.* ¶ 1-2), that "evidence" is a recent NextMark, Inc. ("NextMark") data card regarding accounts through March 1, 2022, which says nothing about 2016. (*Id.* ¶ 2, Ex. A.)

Plaintiff seeks to represent a class of all Michigan residents who allegedly had their PRI disclosed to third parties by NWF without their consent prior to July 31, 2016. (*Id.* ¶ 51.) Plaintiff's allegations and those of the putative class are brought under the pre-July 31, 2016 version of the PPPA in order to take advantage of the $5,000 statutory penalty available under that version of the statute, meet the aggregate amount necessary for federal jurisdiction (because this putative class action is not allowed in Michigan state court),[3] and avoid the obligation to plead each class member's actual damages.

## ARGUMENT

### I.  Plaintiff Fails to State a Claim.

To survive a motion to dismiss, Plaintiff must allege facially plausible *facts* surrounding her claims that NWF is liable under the PPPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the

---

[3] Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. To circumvent this prohibition, Plaintiff seeks to invoke federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*See* FAC ¶ 11.)

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("a formulaic recitation of a cause of action's elements will not do."). In other words, a plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). And of course, a court must not presume the truth of legal conclusions in a complaint. *Iqbal*, 556 U.S. at 678.

Here, the FAC is devoid of any actual *facts* supporting Plaintiff's allegations that NWF unlawfully disclosed her PRI in violation of the PPPA. To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information. M.C.L. § 445.1712 (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer.").

But Plaintiff's PPPA claims are broad and conclusory, cut and paste allegations, pled largely on information and belief, that NWF disclosed subscriber names and addresses to "data aggregators, data appenders, data cooperatives, and

list brokers . . . during the relevant pre-July 31, 2016 time period." (FAC ¶ 1.) Plaintiff does not substantiate this barebones statement, thus failing to provide sufficient facts from which this Court could draw a plausible inference that NWF violated Plaintiff's rights under the PPPA in 2016. *See Ashcroft*, 556 U.S. at 678; *Nashel*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30, pg. 8 (Ex. 1).

In *Nashel*, a PPPA action filed by the same plaintiff's counsel as here, Judge Murphy granted defendant's motion to dismiss for failure to plead a plausible claim under the PPPA. *Id.* at 13. Just as Plaintiff attempts to do here with her citation to a 2022 data card published by a third party, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period. *Id.* at 3, 9 (submitting data cards from nearly a decade before the relevant 2016 time period). The *Nashel* plaintiffs went even further, however, and made allegations about the defendant's privacy policy and cited a case study concerning Virginia Beach renting a list of defendant's subscriber's email addresses. *Id.* at 9. Nonetheless, the *Nashel* court found that "Plaintiff's allegations, even in light of that evidence, fail to clear the plausibility threshold." *Id.* The evidence relied upon by plaintiffs—the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period." *Id.* And, "a complaint containing a statement of facts that merely creates a

7

suspicion of a legally cognizable right of action is insufficient." *Id.* (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).

Here, as in *Nashel*, Plaintiff creates, if anything, nothing more than mere suspicion of a PPPA violation, which is insufficient to satisfy *Iqbal*. As an initial matter, the sole piece of so-called "documented evidence" Plaintiff relies upon is a third-party data card published by NextMark, similar to the one attached to the *Nashel* complaint. (FAC ¶ 2; Ex. A.) Neither the timing nor the content of this data card supports Plaintiff's allegations that NWF violated the PPPA in the pre-July 31, 2016 time period. At most, the data card shows that after March 1, 2022—nearly *six years* after any alleged statutory violation—a third party offered to sell certain information about some of NWF's active subscribers. (*Id.*) Just as in *Nashel*, the relied upon data card from an irrelevant time period does not rise to the level of the requisite plausible inference. *Iqbal*, 556 U.S. at 678.

Plaintiff attempts to correct this timing issue by alleging in a conclusory fashion, and on information and belief as per the preamble to the FAC, that "[t]he same or substantially similar" data card was available "as far back as the beginning of 2015 and throughout the entire pre-July 31, 2016 period." (FAC at ¶ 2.) Based on the alleged existence of a "similar" data card in 2015—which was not attached to the FAC—Plaintiff makes the leap that this demonstrates "NWF was renting, selling, exchanging, and otherwise disclosing all of its' customers' Personal

Reading Information (including Plaintiff's and all Class members' Personal Reading Information) to third parties during the relevant pre-July 31, 2016 time period." (*Id.*) But such a vague and conclusory allegation is insufficient under *Iqbal*. Just as Judge Murphy found in *Nashel* regarding the out-of-date data cards cited there, Plaintiff's allegations here necessarily rely "on a legal-conclusion inference:" that Defendant systematically violated the PPPA from 2022 backwards to 2016. *Nashel*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30, pg. 10 (Ex. 1).This Court cannot "presume the truth of legal conclusions" and because "Plaintiffs cannot otherwise account for the . . . time gap, the data cards make the complaint's allegations merely *possible* rather than plausible." *Id.* (internal citation omitted).

Moreover, Plaintiff does not attach the alleged prior data card and there is no allegation as to its date. Absent this information, which would have been available to Plaintiff, the Court is impermissibly left to speculate about the date of the data card and what information it contained. *See Courser v. Mich. House of Representatives*, 831 F. App'x 161, 182 (6th Cir. 2020). Accordingly, Plaintiff's vague reference to an earlier data card cannot support Plaintiff's claim or give rise to any plausible inference that NWF released her data—or anyone else's—in 2016. *Nashel*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30, pp. 9-13 (Ex. 1).

In any event, the content of this data card or any "similar" data card does not establish that NWF plausibly violated the PPPA, for at least two reasons:

*First*, to be actionable under the PPPA, the information disclosed must "specifically identify the plaintiff to the party receiving that information." M.C.L. § 445.1712. Here, however, to the extent the data card is at all relevant, it shows that identifying information was "slugged"—meaning deleted—so that the subscriber's name is not associated with the subscribed-to publication. (FAC ¶ 2, Ex. A.)[4] Accordingly, this "evidence" does not support a PPPA violation because any information would not have been identifying as it would not have contained a person's full name, and by the same token, would not constitute "Private Reading Information," as defined by Plaintiff. (FAC ¶ 7) (defining PRI to include "full names"); M.C.L. § 445.1712 (concerning unauthorized disclosure of information "that *indicates the identity* of the customer.") (emphasis added).

*Second*, the content of the data card does not establish that NWF violated the PPPA. The data card provides no suggestion as to what information was accessible through the mailing list. Nor does the data card explain the source of any information available in the mailing list, meaning that there is no connection between the data card and any alleged conduct by NWF. (FAC ¶ 2, Ex. A) As a result, "nothing on the data cards explains how [NextMark] received Defendant's subscription list" and therefore "fail[s] to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to

---

[4] The data card states: "Ranger Rick masterfile SUBSCRIBER names are provided TITLE SLUGGED only, "To the ___Family." (FAC ¶ 2, Ex. A.)

disclose information personally identifying the customer." *Nashel*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30, pg. 11 (Ex. 1). (internal citation omitted). This is a "gaping omission" that requires a "large inferential leap" to connect NWF's alleged conduct to the data cards, and Plaintiff fails to "create a reasonable inference of Defendant's culpability," just as the *Nashel* court found. *Id.* at 11-12.

In addition to *Nashel*, in another action alleging claims under the Michigan PPPA brought by the same lawyers as here, the court dismissed a similar complaint against Apple for failure to plead plausible facts supporting its PPPA claim. *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), attached hereto as Exhibit 2. Just as in the FAC against NWF, the *Wheaton* plaintiffs claimed that "to supplement its revenues," Apple "rents, transmits, or otherwise discloses" its customers' private information "to data aggregators, data miners, data brokers, data appenders, and other third parties." *Id.*

The *Wheaton* court dismissed the plaintiffs' PPPA claim because "[t]he complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the screenshots on which the complaint depended, including similar data cards as to the one Plaintiff relies on here, "d[id] not show that Apple disclosed customers' personal listening information." 2019 WL 5536214, at *5. The same result should follow here.

Finally, the only other remaining allegation supporting Plaintiff's claims of PRI disclosure here is that she allegedly saw a "dramatic uptick" in junk mail during the undefined relevant timeframe. (FAC ¶¶ 1-5, 11, 48, 51, 67, 71-74) But Plaintiff does not specify any causal connection between her subscription to an NWF publication and that uptick. (FAC ¶ 4.) There could be any number of reasons for an uptick in her junk mail, including for some of the reasons Plaintiff herself pleads.[5] Moreover, if NWF had been making monthly disclosures of all customers' information since early 2015, why would Plaintiff suddenly receive a "dramatic uptick" in junk mail only during a short window of time in 2016? This implausible allegation is incapable of supporting Plaintiff's claim. *Iqbal*, 556 U.S. at 678.

Without factual allegations "facially support[ing] the conclusion" that her personal information was wrongfully disclosed to a third party, Plaintiff has not pled the requirements for a claim under the PPPA. *Bishop*, 520 F.3d at 520. The Sixth Circuit has consistently found that bare allegations of purported disclosures are insufficient in cases alleging illegal disclosures of private information. *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022) (bare allegations of disclosure insufficient in case alleging disclosure of private information); *Long v. Insight Commc'ns of*

---

[5] *See* Doc. 15 at PageID.671-673 (Plaintiffs' own FAC describes a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "*numerous offline and online sources*.") (emphasis added).

*Cent. Ohio, LLC*, 804 F.3d 791, 792 (6th Cir. 2015) (affirming dismissal of a claim under the Stored Communications Act because plaintiffs failed to plead that the defendant knowingly or intentionally divulged plaintiffs' information).

In sum, Plaintiff has not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted). Her claim must be dismissed under Rule 12(b)(6).

## II. Plaintiff Has Failed to Plead Facts Supporting the Timeliness of Her Claims Under Either a Six- or Three-Year Limitations Period.

Plaintiff alleges that a six-year limitations period should be applied to her claims. (FAC ¶ 1, n. 1.) For the reasons described in the next section, Defendant contends the applicable period is three years. But under either scenario, Plaintiff has failed to plead that her claims are timely, as this Court can make no reasonable inference as to the date Plaintiff's claims accrued in her threadbare FAC. *See Iqbal*, 556 U.S. at 678. Rule 8(a), while not requiring detailed factual allegations, does require Plaintiff to show she is entitled to relief. Fed. R. Civ. P. 8(a); *Brewer v. William C. Grossman, PLLC*, 2018 WL 4688944, at *1 (E.D. Mich. Sept. 28, 2018). Indeed, a plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527 (emphasis in original).

Here, Plaintiff pleads only that she is a subscriber and then alleges in a conclusory fashion that her PRI was disclosed at some point in 2016. Even assuming a six-year limitations period for her claims, Plaintiff's claims are not timely unless her PRI was disclosed within six years of when she brought her claim. Based on the initial filing date of May 30, 2022, Plaintiff's PRI would have had to have been disclosed in the short May 30, 2016 to July 30, 2016 timeframe for her claim to be timely under the pre-July 30, 2016 statute. But she never pleads that. In fact, all Plaintiff does is refer to the "relevant pre-July 2016 time period," without any specificity whatsoever. (FAC ¶¶ 1-5, 11, 48, 51, 67, 71-74) Because there is no allegation in the FAC that Plaintiff's PRI was disclosed from May 30, 2016 to July 30, 2016, the FAC fails for this reason too, even assuming a six-year limitations period. Plaintiff simply has not met even the low bar of an "entitlement to relief" under Rule 8 given this pleading deficiency.

## III.   The Three-Year Limitations Period Should Apply, Foreclosing Plaintiff's Claims.

M.C.L. § 600.5805(2) provides that "the period of limitations is 3 years after the time of the death or injury for *all* actions to recover damages for the death of a person or for injury to a person or property." Michigan courts consistently apply Section 600.5805(2)'s three-year statute of limitations to common law privacy-based claims. *See, e.g., Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (three-year

14

limitation period applied to invasion of privacy, unlawful intrusion claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year limitations period applied to invasion of privacy claim).

Plaintiff will nonetheless argue that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does not contain an express limitations period. (FAC ¶ 1 n.1.) Section 600.5813 provides: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." Three judges in this District and one judge in the Western District of Michigan agree with Plaintiff's position, holding the "catch all" six-year limitations period under M.C.L. § 600.5813 applies to PPPA claims. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.) slip op.; and *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.); *Nashel*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30 (Murphy, J.).

But there are decades of Michigan cases that have applied the three-year limitations in Section 600.5805(2) to *statutory* claims that, as here, allege injury to *persons*, even when the statute was otherwise silent on a limitations period. *See e.g.*, *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act); *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b).

The district courts' reliance on *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 534 (6th Cir. 2017) or *DiPonio Construction Co. v. Rosati Masonry Co.*, 246 Mich. App. 43, 51-52 (2001) is misplaced. Instead of broadly addressing what limitations period applies to all Michigan statutory claims, *Palmer Park* addressed only the very specific claim before the court: a cause of action created by the Michigan Insurance Code through which a business could seek penalty interest against another business for failing to timely pay insurance benefits. 878 F.3d at 532. The statute at issue in *Palmer Park* did not contain a specific limitations period. *Id.* at 534. The defendant in that case, an insurance

16

company, argued that a two-year contractual limitations period in the relevant insurance policy should apply to the statutory claim. *Id.* The plaintiff argued that, as the claim did not "arise from any legal duty created by the Policy," and was only actionable as a result of the statute, the six-year limitations period in Section 600.5813 should apply. *Id.* at 535–36.

Similarly, *DiPonio* concerned a claim by a business against another business for unlawful withholding of funds in violation of the Michigan Builder's Trust Fund Act, which has nothing to do with an alleged personal injury, as is the case here. In *DiPonio*, the statute at issue concerned a contractor's failure to pay subcontractors. *DiPonio Constr. Co.*, 246 Mich. App. at 51-52. Such an action under Michigan Builder's Trust Fund Act fell well outside an injury to persons or property, as it dealt with how a contractor *used* funds that were owed to another. Moreover, the purpose of the Act did not square with any common-law claim.

While the determination of a six-year-limitations period may have been appropriate in *Palmer Park* and *DiPonio*, the blanket statements in those decisions regarding the applicability of the six-year statute of limitations to statutes that are silent on limitations periods must be read in the context of the types of claims involved in both of those cases—neither of which were akin to the personal injury claim inherent in the PPPA.

17

That *Palmer Park* and *DiPonio* are not applicable to a PPPA claim is evident from subsequent Sixth Circuit precedent. *Dabish* affirmed the application of a three-year limitations period for personal injuries based on the violation of a statute (ethnic intimidation) that did not itself prescribe a limitations period. *Dabish*, 818 F. App'x at 427-29. In *Dabish*, the Sixth Circuit applied M.C.L § 600.5805(2)'s three-year limitations period to an action brought under a Michigan statute that did not itself contain a specified limitations period. *Id.* If the courts in *Pratt*, *Hall* and *Krassick* were correct in finding that *Palmer Park* stands for the proposition that any Michigan statutory action is subject to the catch-all six-year limitations period if the relevant statute does not contain its own limitations period, then that is tantamount to finding that the Sixth Circuit directly contradicted itself and got it wrong in issuing the *Dabish* decision.

The *Krassick* and *Nashel* courts attempted to thread the needle on this point, reasoning that the PPPA protects "the right to privacy in one's audiovisual and reading materials." *Nashel*, No. 2:22-cv-10633-SJM-DRG, ECF No. 30, pg. 7; *Krassick*, No. 2:21-cv-180, 2022 WL 2071730, at *3. According to these courts, there was no right to privacy protection at common law, and thus, the three-year limitations period is inapplicable. But neither court took account of the *Dabish* decision, as surely there was no specific right at common law to be free of ethnic intimidation.

Moreover, Michigan law is clear that when two potentially applicable Michigan statutes of limitations are at issue, the more specific statute of limitations should control. *See e.g., Michigan Emp. Sec. Comm'n v. Westphal*, 542 N.W.2d 360, 362 (Mich. Ct. App. 1995); *Frame v. Nehls*, 550 N.W.2d 739, 741, n.3 (Mich. 1996). Here, the more specific three-year statute of limitations for personal injury should control,[6] and Plaintiff's claims are therefore time-barred.

## IV.    Dismissal with Prejudice is Warranted.

This is Plaintiff's attempt to articulate a cognizable PPPA claim in this action. Even with the benefit of NWF's first motion to dismiss, and the opportunity to amend her vague and conclusory claims, Plaintiff has still failed to do so. Having presumably put forth Plaintiff's best allegations in support of the purported PPPA violations here, it is clear that Plaintiff cannot cure the pleading deficiencies or the fundamental defects of her claim. *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (dismissal with prejudice proper where plaintiff "could prove no set of facts in support of its allegations that would

---

[6] Other federal courts outside of this District have applied Section 600.5805(2)'s three-year limitations period to PPPA claims. *See Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017). Notably, even Plaintiff's counsel here took the position in prior PPPA suits that the PPPA was subject to a three-year statute of limitations pursuant to M.C.L. § 600.5805(2). *See Markham v. Nat'l Geographic Partners, LLC*, No. 1:19-cv-00232, (W.D. Mich.), ECF 26 (arguing for tolling of the three-year limitations period); *Rentola v. Dow Jones & Co., Inc.*, No. 4:20-cv-11589 (E.D. Mich.), ECF 12 at PageID.196 ("Claims under the [PPPA] are subject to a 'three year statute of limitations.'").

entitle it to relief" rendering amendment futile). Accordingly, any attempt by Plaintiff to amend would be futile, and Plaintiff's Complaint should be dismissed with prejudice, as the *Nashel* court did in similar circumstances.

## V.    CONCLUSION

For the foregoing reasons, NWF respectfully requests that the FAC be dismissed with prejudice.


Date: October 13, 2022                    Respectfully submitted,

                                          /s/ *Kristen C. Rodriguez*
                                          DENTONS US LLP
                                          Natalie J. Spears
                                          Kristen C. Rodriguez
                                          233 S. Wacker Drive, Suite 5900
                                          Chicago, IL 60606-6404
                                          Tel: (312) 876-8000
                                          kristen.rodriguez@dentons.com

                                          CLARK HILL PLC
                                          Peter B. Kupelian (P31812)
                                          Carol G. Schley (P51301)
                                          151 South Old Woodward Avenue,
                                          Suite 200
                                          Birmingham, MI 48009
                                          Tel: (248) 530-6336
                                          pkupelian@clarkhill.com
                                          cschley@clarkhill.com

                                          *Counsel for Defendant,*
                                          *National Wildlife Federation*

## **Certificate of Service**

I hereby certify that on October 13, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

|  |  |  |
|---|---|---|
| SHERRY GAINES, individually and on behalf of others similarly situated, | **)** | |
| | **)** | |
| | **)** | |
| | **)** | |
| Plaintiff, | **)** | Case No. 5:22-cv-11173-JEL-CI |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| NATIONAL WILDLIFE FEDERATION, | **)** | Hon. Judith E. Levy |
| | **)** | |
| | **)** | |
| Defendant. | **)** | |

**INDEX OF EXHIBITS CITED IN DEFENDANT NATIONAL WILDLIFE
FEDERATION'S MOTION TO DISMISS COMPLAINT AND
<u>MEMORANDUM IN SUPPORT</u>**

**Exhibit 1:** Omnibus Opinion and Order, *Nashel v. The New York Times,* No. 2:22-cv-10633-SJM-DRG, ECF No. 30 (E.D. Mich. Oct. 11, 2022).

**Exhibit 2:** Unpublished opinion, *Wheaton v. Apple Inc.,* No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).