# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

SHERRY GAINES, individually and on behalf of others similarly situated,

    *Plaintiff*,

v.

NATIONAL WILDLIFE FEDERATION,

    *Defendant*.

Case No. 5:22-cv-11173
Hon. Judith E. Levy

## DEFENDANT'S CORRECTED REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Kristen C. Rodriguez
Deborah H. Renner
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
kristen.rodriguez@dentons.com
deborah.renner@dentons.com

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 South Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*
*National Wildlife Federation*

#3404596

In response to NWF's motion to dismiss, Plaintiff does little more than parrot the inadequate allegations of her FAC—allegations akin to those already held to be wanting in a virtually identical complaint against The New York Times last month, a decision Plaintiff's counsel elected not to appeal. *Nashel v. N.Y. Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).[1] Plaintiff's conclusory allegations about the alleged disclosure of PRI generally and in the irrelevant post-2016 timeframe are insufficient to state a claim.

Nor is Plaintiff correct that the applicable limitations period is six years, as Sixth Circuit caselaw points otherwise in this unsettled area of the law. But whether the applicable limitations period is three years or six years, significantly, Plaintiff does not adequately plead when her PRI was disclosed, which is also fatal.

Plaintiff has already had one attempt to amend and has failed to adequately plead her claims. She should not be permitted to keep her meritless suit alive through any further amendments. The FAC should be dismissed with prejudice.

## ARGUMENT

**I.    Plaintiff Fails To Plausibly Allege Any Unlawful Disclosures.**

Plaintiff contends that she need not prove her claims at this stage. True enough. But the Court need not accept as true "conclusory allegations," "'legal conclusions,'" or "'unwarranted factual inferences.'" *Davis v. Hartford Life &*

---

[1] Abbreviations have the meanings ascribed to them in NWF's Opening Papers.

1

*Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020) (quoting *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 465–66 (6th Cir. 2017)). Yet that is precisely what Plaintiff asks this Court to do by simply accepting her *ipse dixit* allegation that NWF disclosed "all" its subscribers' data to various third parties during a narrow period of time of several months in 2016.[2] (*See, e.g.,* ECF No. 15 ("FAC"), at ¶¶ 5, 7, 73.) Vaguely stating PRI was disclosed to unnamed list brokers, data aggregators, and data brokers does not bolster this conclusory allegation. (*Id.* at 1, 7, 11.)

Plaintiff next contends her allegations are similar to those in other cases that have survived dismissal. (*See* ECF 21, PageID.1270.) But of the five cases she cites, four do not even consider whether the complaints pled sufficient allegations to establish an actionable disclosure under the PPPA.[3] The remaining case, *Horton v. GameStop, Inc.*, relied on a website printout dated less than two months prior to the time the complaint was filed to find the plaintiff had alleged an unlawful disclosure.

---

[2] Plaintiff contends that her claim is subject to Covid tolling. (ECF No. 21, PageID.1264.) That issue is not relevant to this motion because regardless of which pre-2016 period applies, if any, Plaintiff has not pled a disclosure in that period. NWF disputes that such tolling applies and will address that argument if needed at the appropriate juncture. More to the point, Plaintiff never explains why being allowed additional time to file a complaint would translate into a backward expansion of the class period. (*See* ECF No. 21, PageID.1258, 1267–68.)

[3] *See Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 452–54 (S.D.N.Y. 2016) (finding PPPA exception did not warrant dismissal); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 874 (E.D. Mich. 2017) (addressing standing and unjust enrichment claim); *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 639–43 (E.D. Mich. 2017) (same); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 587–590 (S.D.N.Y. 2016) (deciding standing, jurisdiction, unjust enrichment and constitutionality).

380 F. Supp. 3d 679, 682 (W.D. Mich. 2018).[4] Here, in contrast, the 2022 data card cannot create a reasonable inference that NWF subscriber lists were sold in 2016. (*See* ECF No. 15, at ¶ 2, Ex. A.) Rather, just as in *Nashel*, the data card Plaintiff relies on here is from an irrelevant time period and cannot give rise to a plausible inference of disclosure of Plaintiff's or anyone else's PRI in 2016. Plaintiff attempts to distinguish *Nashel* because the data cards cited there pre-dated 2016, and here the data card attached to the FAC post-dates 2016 and includes purportedly "cumulative" data counts. (*See* ECF 21, Page.ID 1262.); *see also Nashel*, 2:22-cv-10633, ECF 25, PageID.1454 (arguing the pre-2016 data cards were sufficient because defendant "continued to systematically engage in the same wholesale disclosure practices as advertised in the 2007 and 2008 data cards over the course of the next decade plus"). But this is a distinction without a difference because Plaintiff has alleged nothing from 2016, yet has attempted to extend untimely data cards to 2016 based on pure conclusory statements. Nor does Plaintiff's argument that the 2022 data card is "cumulative" mean that Plaintiff's data was disclosed in 2016. The data card merely states "*COUNTS THROUGH* 03/01/2022" with no further details provided. Thus, any conclusions regarding the temporal scope of the purportedly available data are mere assumptions and do not support an actual disclosure.

---

[4] Significantly, discovery in *Horton* revealed the defendant had **not** disclosed data to the third party whose data card was included in the complaint, which shows the unreliability of these third-party data cards.

Similarly, Plaintiff urges the Court to accept her conclusory information and belief allegation that a "substantially similar" data card was available in 2015. (*Id.* at ¶ Page.ID 1270.) This Court should reject Plaintiff's legal conclusion and concomitant inference that PPPA violations ran from 2022 backwards and her speculation about the date and contents of a 2015 data card. (*See* ECF 18 (Open. Br.), PageID.1213.); *see also Nashel*, 2022 WL 6775657, at *5 (holding the court would not rely on a "legal conclusion" to cure timing issues with the alleged data cards).[5] Similarly, in response to NWF's argument that the data cards also fail to reveal the source of any purportedly available subscriber data advertised on the data card, Plaintiff states it had to be NWF because of the "Masterfile" designation on the data card. But that is not pled, requires pure speculation from the Court, and is contrary to Plaintiff's other allegations that there are numerous sources from which data aggregators, brokers and others acquire information on consumers.[6] (*See, e.g.*, ECF 15, PageID.672, ¶ 27.) Just as in *Nashel*, "nothing on the data cards explains

---

[5] *Nashel* included more detailed allegations of disclosure, including the defendant's privacy policy and a marketing case study, which the court still deemed insufficient.
[6] Nor does *Horton*, 380 F. Supp. 3d at 682, stand for the proposition that the "Masterfile" designation on the data card means that information was disclosed by NWF. (*See* ECF 21, PageID.1277.) Plaintiff's reliance on *Cain v. Redbox Automated Retail, LLC*, is also unavailing because no one disputes well-pled allegations must be taken as true. 981 F. Supp. 2d 674, 685 (E.D. Mich. 2013) (issue was whether defendant's vendors were considered "agents" under the PPPA).

4

how the list brokers received Defendant's subscription list." *Nashel*, 2022 WL 6775657, at *5.

Moreover, while Plaintiff claims the *Nashel* decision is an "outlier" (ECF 21, PageID. 1273), at least one other court held that at the motion to dismiss stage a data card published by a third party who markets or offers subscriber data for sale says nothing about the disclosure of PRI, let alone an unlawful disclosure. *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019).[7] Plaintiff attempts to distinguish *Wheaton* by arguing the FAC contains additional allegations, but she only cites a single such allegation, which vaguely refers to industry practice. (*See* ECF 21, PageID.1274.) Indeed, the core of the allegations are identical, as set forth in NWF's opening papers. (*See* ECF 18, PageID.1215.) Moreover, contrary to Plaintiff's arguments, the *Wheaton* decision did not turn on the type of media at issue. Rather, the court scrutinized the allegations of unlawful disclosure and found they could not support a plausible PPPA claim. 2019 WL 5536214, at *4-5. The same result should follow here.

Plaintiff argues in a footnote that the "uptick in junk mail" alleged adds plausibility to her allegations. (ECF 21, PageID.1272, n.4.) But she does not allege the purported uptick was causally related to NWF, nor can she do so given the

---

[7] Moreover, of the cases that have analyzed whether PPPA claims were adequately pled under 12(b)(6)—*Wheaton*, *Nashel*, and *Horton*—only *Horton* found the complaint sufficient. Thus, *Horton* is the outlier.

5

myriad other ways her information could have been disclosed and lead to a deluge of junk mail.[8] (ECF 15 at PageID.671-73.) And this same allegation was made in *Nashel* to no avail. *Nashel*, 2:22-cv-10633, ECF 30, PageID.685. Moreover, Plaintiff asks the Court to ignore the fact that the subscribers' names purportedly available for rent by the data card relied upon are "slugged." The data card on its face states subscriber names are slugged—with identifying information deleted—which is what is pled and must be considered as true. *See, e.g.*, *Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 537 (6th Cir. 2017) ("The law is clear that [courts] may consider [a document] which was attached to the [c]omplaint . . . in determining whether dismissal is proper.").

Finally, Plaintiff contends that because the statute of limitations is an affirmative defense, she need not plead compliance with it. But that argument misses the point—while she need not plead compliance with the statute of limitations, under Rule 8, Plaintiff must plead an entitlement to relief *within* the narrow pre-July 30, 2016 timeframe because that is the exclusive basis for her claims to recover statutory damages. She has not adequately pled that her PRI was disclosed then, or at *any* time.

---

[8] Plaintiff also makes the wildly inappropriately argument that this Court should infer wrongdoing because NWF did not submit an affidavit attesting that Plaintiff's PRI was not disclosed. (ECF 21, PageID.1275, n.6.) NWF has no responsibility to disprove the conclusory allegations in the FAC.

6

Plaintiff wants this Court to discard the *Iqbal* standard because, she contends, no plaintiff could ever allege enough for a plausible allegation of disclosure. But that is not true, and the Court is not at liberty to ignore *Iqbal*.[9]

## II.   Plaintiff's Claims Are Time-Barred.

Plaintiff largely relies on *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017), to argue that a six-year limitations period should apply here. But, three years after *Palmer Park*, the Sixth Circuit in *Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020), applied the three-year limitations period to an ethnic intimidation claim under a statute without an express limitations period. (*See* ECF 18, at PageID.1222.) Plaintiff ignores *Dabish*, hoping that the fact that several Michigan district courts have applied the six-year limitations period will sway this Court to follow suit. But none of the district courts considering this issue have considered *Dabish*, which this Court should consider. (*Id.*)

## CONCLUSION

For the foregoing reasons and those set forth in NWF's opening papers, the FAC should be dismissed with prejudice.

Date: November 18, 2022                    Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
*Counsel for Defendant*

---

[9] *See, e.g.*, *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (in data breach context, plaintiffs alleged specific injuries close in time to breach).

7

## Certificate of Service

I hereby certify that on November 18, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez
