UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**E.R. THROUGH HIS MOTHER AND
LEGAL GUARDIAN SHERRY GAINES,
SHERRY GAINES,PARENT AND LEGAL
GUARDIAN OF E.R.,**

                    Plaintiff,

                                    **HONORABLE F. KAY BEHM**

        v.
                                    **No. 22-cv-11173**

**NATIONAL WILDLIFE FEDERATION,**

                    Defendant.
_____/


                **MOTION HEARING**

            **Wednesday, April 26, 2023**



                    -   -   -   -



*To obtain a certified transcript, contact:*
Andrea E. Wabeke
*Federal Official Court Reporter • Certified Realtime Reporter
810.341.7849 · www.transcriptorders.com*
*Transcript produced using machine shorthand and CAT software.*

Appearances:

**On behalf of Plaintiff**          **On behalf of Defendant**

E. Powell Miller                Kristen C. Rodriguez
The Miller Law Firm             Dentons US LLP
950 W. University Dr.,-Ste. 300 233 S. Wacker Dr.-Ste. 5900
Rochester, MI  48307            Chicago, IL  60606
248-841-2200                    312-876-6133
epm@millerlawpc.com             kristen.rodriguez@dentons.com

Philip L. Fraietta
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
646-837-7150
Email: pfraietta@bursor.com

Frank S. Hedin
Hedin Hall LLP
1395 Brickell Ave
Suite 900
Miami, FL 33131
305-357-2107
Fax: 305-200-8801
Email: fhedin@hedinhall.com

-   -   -

*Motion Hearing*
*Wednesday, April 26, 2023*

**I N D E X**

- - -

**Page**

Argument by Ms. Rodriguez...........................   4

Reply Argument by Mr. Miller........................  23

Rebuttal Argument by Ms. Rodriguez..................  38

Surreply Argument by Mr. Miller.....................  45

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 4*

1          Flint, Michigan

2          Wednesday, April 26, 2023

3          2:00 p.m.

4                    -   -   -

5

6          **THE COURT:**  Good afternoon, everybody.  We have the

7   matter of Sherry Gaines versus National Wildlife Federation,

8   case number is 22-11173.  It looks like from the pleadings I

9   have Mr. Miller here for the Plaintiff and Ms. Rodriguez from

10  Defendants -- for Defendant.

11          Mr. Fraietta, who are you here on behalf of, Plaintiff

12  Defendant?

13          **MR. FRAIETTA:**  Good afternoon.  I'm also on behalf of

14  the Plaintiff, but Mr. Miller will be the primary speaker.

15          **THE COURT:**  Okay.  And then we have Mr. Hedin.

16          **MR. HEDIN:**  Your Honor, I'm also here on behalf of

17  behalf the Plaintiff.

18          **THE COURT:**  All right.  Ms. Rodriguez.  This is your

19  motion to dismiss, and also there were some motions to submit

20  supplemental authority, if you would like to address your

21  motion, please.

22          **MS. RODRIGUEZ:**  Yes, your Honor.  Thank you very much

23  for hearing us today.

24          This case presents the Court with an opportunity to really

25  exercise its very important role as a gatekeeper to the doors

              *22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 5*

1   of the federal courthouse, and this case should not be allowed

2   through those doors.  It is simply too little too late, and so

3   we are here today seeking dismissal under 12(b)(6) grounds on

4   the grounds that Ms. Gaines, the named Plaintiff in this class

5   action, has not pled a plausible claim under the Michigan

6   Preservation of Personal Privacy Act, and, in any event, her

7   complaint is untimely, and I'll address those in turn with a

8   focus on the deficiency of the pleadings here, your Honor, but,

9   first, I think it would be important to give the Court some

10  context for the litigation landscape that we find ourselves in.

11      Now, I know the *Brisco* case is also pending before your

12  Honor, and that case, along with this one against my client,

13  the National Wildlife Federation, is just two of the nearly 100

14  cases that have been filed in just over the past year or so

15  under this same act, and all of these cases have been filed as

16  class actions, and most of these cases have been filed against

17  small publishers or nonprofit organizations like my client, and

18  all of these cases contain virtually the same cookie cutter

19  allegations.

20      It's also not surprising that all of these cases

21  exclusively claim violations of this Michigan act that predate

22  July 31st, 2016, and the reason for that, your Honor, is

23  obvious.  The reason is to take advantage of the $5,000 penalty

24  that existed prior to this date and that no longer exists

25  today, and, on top of that, as I mentioned, all of these cases

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 6*

1  have been brought as class actions, which would actually be

2  banned in Michigan state court because class actions are not

3  allowed under this statute, and so here we are before your

4  Honor in federal court.

5       So what all of that means is, regardless of the

6  meritorious defenses that might happen down the line, the

7  threat of that statutory damages amount, combined with the

8  class action procedural posture that we find ourselves, all of

9  that creates exponential risks for Defendants right here and

10  right now.

11       And so with all of that context in mind, we ask this Court

12  to take very seriously its role in evaluating pleadings at the

13  outset and not allow deficient ones to enter into the doors of

14  the federal courthouse.  So I'd like to begin there with the

15  deficiency of the pleadings, which is the first argument that

16  we have raised on this motion to dismiss.

17       This case simply does not state a claim under the Michigan

18  PPPA, and I'm going to take a step back and remind the Court

19  what the PPPA prohibits and what it stands for.  The PPPA does

20  not prohibit all disclosures of any type of data.  It is

21  cabined.  As applied here, it applies to written materials.  So

22  the magazine information that Plaintiffs have alleged here, and

23  it prohibits the disclosure of information that identifies the

24  purchaser of a magazine material, identifies a purchaser.  That

25  is an important element here.  It also must identify the

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 7

1   specific written materials that were purchased, which is also

2   an important element here.

3        Another thing to keep in mind, your Honor, is that the

4   PPPA does not flatly prohibit disclosure altogether.  There are

5   certain exceptions that were baked in, and so the list rental

6   process, a very commonplace marketing practice that has

7   existed, gosh, since the '70s, if not before then, and was

8   certainly contemplated by the legislature in the '80s when this

9   act came into existence.  There's actually an exception for

10  that.  There's an exception for disclosures to agents.  All of

11  that is just, again, to provide this Court with some additional

12  context about the PPPA and what it actually prohibits and what

13  it doesn't prohibit.

14       So keeping that in mind, what the Plaintiff has failed to

15  do here is demonstrate, to show an entitlement to relief under

16  this act for Ms. Gaines.  The complaint is woefully deficient

17  in showing that Ms. Gaines' information was disclosed in a

18  manner violated the act before July 31st, 2016.  It has to

19  happen before that period in order for her to have an

20  entitlement to relief under the very narrow version of the act

21  that the Plaintiffs have alleged here.  If the disclosure

22  happened yesterday, if it happened a year ago, then there's not

23  a claim here.  It has to happen pre July 31st, 2016 in order

24  for the Plaintiffs to be entitled to that $5,000 per violation

25  statutory penalty that they are seeking here, and all they have

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 8

1   pled, on information and belief, is that her information was

2   disclosed prior to July 31st, 2016, and under the

3   well-established pleading standards of *Twombly* and of *Iqbal*,

4   that is simply not enough.  Those are conclusions.  Those are

5   legal statements, and they are not factual statements that show

6   entitlement to relief.

7       You know, the only thing they can really show in this

8   case, your Honor, is this data card that they have made a big

9   to do of in this case, and I have prepared a PowerPoint that

10  shows the data card that was used in this complaint as an

11  exhibit, and also embedded into the complaint, and with your

12  Honor's permission, I'd like to share my screen and show the

13  data card that was included within the complaint, if that's

14  possible in this format.

15      **THE COURT:**  Any objection from Plaintiff's counsel,

16  and I'm not sure who's going to be speaking on behalf of

17  Plaintiff's counsel?

18      **MR. MILLER:**  I will speak.  It's Mr. Miller your

19  Honor.  I've never seen this PowerPoint but I have no

20  objection.

21      **THE COURT:**  All right.  Then go ahead, Ms. Rodriguez.

22  We will look for your PowerPoint.

23      **MS. RODRIGUEZ:**  All right, one moment.

24      I'm sharing now the data card that was included on Docket

25  Number 15 in this matter.  Your Honor and opposing counsel may

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 9

1  inquire.  You can see my screen that is entitled Ranger Rick

2  Masterfile with enhancements mailing list.

3      I'm seeing a nodding from your Honor, so I'm going to go

4  ahead and proceed.

5          **THE COURT:**  Yes, I do have it.  I was looking for the

6  hard copy I had on my desk.

7      Go ahead.

8          **MS. RODRIGUEZ:**  And so the reason why I wanted to

9  show this to your Honor, is because, again, this seems to be

10  really at the heart of their allegations.  They have pled that

11  this is in existence now, and they have attached it to the

12  complaint, and this is really the basis for their belief,

13  apparently, that Ms. Gaines' information was disclosed prior to

14  2016.

15      A few things about this data card.  First of all, this is

16  an advertisement.  It is not a disclosure of information.  It

17  is an advertisement that was published, according to the

18  allegations on a third-party website, NextMark, not by my

19  client, the National Wildlife Federation.  Yes, it does

20  reference the National Wildlife Federation, but, again, it was

21  posted, according to the allegations, on a third-party website,

22  and, again, there's nothing in here.  Obviously, there's no

23  subscriber data on here.  Ms. Gaines' information is not posted

24  on here.  This is merely an advertisement for the offer of

25  rental of certain information.

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 10

1      More importantly, or perhaps equally as importantly, is

2  that this data card is a very recent in time data card.  It is

3  from 2022, the year that that this complaint was filed, and

4  Plaintiffs are asking this Court to make the huge inferential

5  leap that the data card published in 2022 offering for sale

6  data or offering for rent data, somehow means that Ms. Gaines'

7  information was disclosed in 2016.  That is far too great of an

8  inferential leap for this court to make under any established

9  pleading standards, far too great, and a number of other courts

10 have come to that same conclusion looking at similar data cards

11 as the one that was here.

12     I'll point your Honor to *Nashel versus New York Times*

13 case.  That case, similarly, found that a data card outside of

14 the time period simply could not allow the court to reach the

15 conclusion that the named Plaintiff's information was disclosed

16 in 2016.  In the *Bozung versus Christianbook* case, similar, the

17 chief judge of the Western District of Michigan came to the

18 conclusion that a data card from 2022 many simply could not

19 mean that the named plaintiffs' information was disclosed all

20 the way back in 2016.  It was too far of an inferential leap to

21 allow the court to make that conclusion, and this Court should,

22 likewise, come to that same conclusion, that a 2022 data card

23 says nothing about a 2016 alleged disclosure.

24     On top of that, I would like your Honor just to draw a few

25 additional points about this data card that I think are notable

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 11

1  here.  First of all, there are certain counts that are listed

2  here.  Plaintiffs allege this reflects counts that are

3  reflected of the total number of subscribers that are available

4  for rent by third parties.  That's referenced here, your Honor

5  in the segments section, and, from this information, they want

6  you to make, again, the factual inference that this

7  651,000-plus names somehow included Ms. Gaines' information

8  because it was through 2022 referenced here and somehow that is

9  cumulative.

10      Well, as the chief judge in the Western District found in

11 the *Bozung* case that makes absolutely no sense and this Court

12 is not required to check its common sense at the door when

13 making decisions on a 12(b)(6) motion.  The court in *Bozung*,

14 likewise, looked at the numbers here and saw they made no sense

15 and, actually, I can go to the *Bozung* data cards to show you

16 what I mean and how that compares to this Ranger Rick data

17 card.  So I'm going to advance to the *Christianbook* data card

18 that was at issue there in the *Bozung* case, and, in this case,

19 the chief judge looked at these segments, again, in a similar

20 position on the data card and said, wait a minute, this doesn't

21 make any sense.  The plaintiffs are alleging that somehow this

22 information includes data from 2016, but we have the total

23 universe of numbers of subscribers here that is basically equal

24 to the 0- to 12-month buyer's number and the 13- to 24-month

25 buyers, that 1.9 plus the 1.3 and change equals up to the 3.2

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 12*

 1  total subscribers.  So it makes no sense, as the judge found,

 2  that somehow there were also 2016 numbers built into there.  It

 3  simply doesn't add up, and makes the claim not plausible, which

 4  is the standard this Court needs to eventually reach.

 5       So going back to the Ranger Rick title.  We have a similar

 6  type of situation.  The numbers that are listed here, you know,

 7  they have a 12-month subscriber number of 546,000 and change

 8  and then there's also a 24-month expire number of 320,000 and

 9  change.  Those numbers are even more than the total number of

10  subscribers, which -- so it makes no sense, their claimed

11  argument in their responsive brief here, your Honor, that

12  somehow that is reflective of 2016 data.  It gets them

13  absolutely nowhere.

14       And all -- and the *Bozung* case lays that out very well, we

15  would submit, in their decision, and that is actually one of

16  the other motions that's before your Honor is our motion for

17  leave to file *Bozung* as supplemental authority.  That has not

18  been opposed, and it's past Plaintiff's time to oppose that.

19  So we would ask that your Honor grant that and consider that as

20  part of the authority submitted in this case.

21       **THE COURT:**  I have all that in my preview, as well as

22  I think there were some additional cases from Judge Kumar from

23  the Eastern District that Plaintiffs were asking.  I have all

24  that in front of me and I am considering all of that.

25       **MS. RODRIGUEZ:**  Thank you, your Honor.

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 13

1    One other point that I would point out, while we're

2    looking at this data card, for your Honor to keep in mind when

3    evaluating the import of this data card, which, again, is

4    really the sole basis for Plaintiff's complaints here.  This is

5    the factual enhancement they are offering to demonstrate

6    entitlement to relief in a pre July 31st, 2016 world.

7    I would offer your Honor just to review this portion at

8    the -- oops, this portion at the end here, which states "Ranger

9    Rick Masterfile subscriber names are provided title slugged

10   only, 'to the blank family.'" And this point really

11   distinguishes this data card from, I believe, just about any

12   other data card that has thus far been decided, and, also, that

13   is really at issue in many other cases.

14   As I mentioned previously, the PPPA prohibits disclosure

15   information that identifies the purchaser, the subscriber in

16   this instance, as Ms. Gaines alleges she is, and if we are

17   going to look at this data card, as Plaintiff has urged, then

18   we need to look at all of it, and the very bottom of this

19   indicates that the name -- the full name is blanked out.  It is

20   only "to the blank family," and, under Plaintiff's own

21   allegations, that type of information is not prohibited to be

22   disclosed by the PPPA.

23   Plaintiffs define the information that NWF allegedly

24   disclosed improperly, as you may recall, personal reading

25   information, and they define that personal reading information

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 14

 1  consistently with the statute, and they define it to mean full

 2  name, home address, and the title of the publication subscribed

 3  to.  It's laid out right there in their complaint.  So using

 4  Plaintiff's own definition of private reading information, the

 5  type of information that is prohibited from being disclosed

 6  here, if we take this as face value, as Plaintiffs are asking

 7  you to make -- as Plaintiffs are asking you to do, then the

 8  blanked out full name means that there's not PRI, private

 9  reading information at issue here, and that, on its own, really

10  distinguishes this particular factual enhancement from others

11  that have been presented in other PPPA actions that are

12  currently being litigated and have been litigated.

13      So right now, we really have the *Bozung* case -- and I'm

14  going to turn off the share screen for now, unless your Honor

15  has any questions about this data card or the *Bozung* one that

16  we looked at.

17          **THE COURT:**  No questions on those.  Thanks.

18          **MS. RODRIGUEZ:**  All right.  I'm going to stop my

19  share now.

20      So where this Court finds itself is we already have

21  decisions that have found very similar factual allegations to

22  not be enough under the PPPA.  We have, just to recap, the

23  *Bozung* decision from the Western District of Michigan issued by

24  the chief judge there.  We have the *Nashel versus New York*

25  *Times* case that was issued in this district at the end of last

*22-cv-11173; Gaines v. National Wildlife Federation*

1  year, and those two cases really demonstrate why this case is

2  not enough, and then when you add in the issue with PRI that I

3  mentioned before with the name being omitted -- the full name

4  being omitted, that really demonstrates in this case that there

5  is no way the Plaintiffs can take this case and shove it

6  over -- shove it over the line of plausibility, which, again,

7  is the standard this Court needs to be focused on here.

8        **THE COURT:**  In the *Nashel* case, on that data card.

9        **MS. RODRIGUEZ:**  Yes.

10        **THE COURT:**  If we could take a look at that.  So the

11  complaint explains -- so that's when the New York Times --

12        **MS. RODRIGUEZ:**  Correct.

13        **THE COURT:**  -- stopped making its data cards publicly

14  available, and the complaint alleges that the data card says it

15  existed from the beginning of 2015 through the entire -- in our

16  case, from the beginning of 2015 through the entire pre 31,

17  2016 period.  Does that matter as far as, you know, *Nashel* with

18  it being predating the claims versus our case?  Can you compare

19  the data cards in *Nashel* to this one?

20        **MS. RODRIGUEZ:**  Yes, your Honor.  So first of all,

21  with regard to the *Nashel* data card, the *Nashel* data card did

22  predate the time period so it was a 2008 date on that at that

23  data card and the Court found that it was implausible to say,

24  you know, you can't take a data card and assume, first of all,

25  that that is a disclosure and then assume that there was a

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 16*

1  continued violation going forward.

2      Here, there is a data card that postdates the alleged time

3  period, but the reasoning, your Honor is still the same.  You

4  can't take a snapshot in time and then assume things were

5  happening backwards or assume improper disclosures were

6  happening forwards.  It's the same principle.

7      Moreover, as the data card that they allege in this

8  complaint that apparently existed as of '15 and '16, that data

9  card allegation is made solely on information and belief, and I

10  would direct your Honor to *Bozung versus Christianbook* case,

11  because, in that case, the chief judge alleged the same type of

12  allegation that was made here, that the 2022 data card was also

13  available in '15 or '16 with similar information, and the court

14  correctly found that, first of all, that's implausible.  It's

15  implausible to believe that a data card from '15 to '16 would

16  have the same information as 2022, because, as a matter of

17  common, sense, fresh data is better, right, for marketers, and

18  so then it would make no sense that we would have the same

19  stale data in 2016.

20      But more importantly, the court also found because that

21  allegation was made on information on belief, it could not

22  properly credit that as an appropriate factual allegation.  It

23  left the Court to speculate as to what was actually there, and,

24  again, it was made on information and belief, which the Sixth

25  Circuit has found is not sufficient to show that factual

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 17

1  enhancement that is required under the Supreme Court's pleading

2  standards.

3      So I would submit to your Honor that the allegation about

4  this data card supposedly being available in '15 and '16 with

5  similar data is implausible, speculative and should simply be

6  disregarded by this Court as an improper and unsupported

7  allegation.

8          **THE COURT:**  If I had a copy of that, would that make

9  a difference, if they were able to provide the 2015 or 2016

10  data card?  If it was closer in time would that make a

11  difference?

12          **MS. RODRIGUEZ:**  No, I don't think it would, because,

13  again, the data card is just an advertisement.  It does not

14  mean a disclosure happened, and that's what matters here.  It's

15  not illegal to have a third-party data broker advertise that

16  information is available.  What's illegal is the disclosure of

17  information.  There needs to be some factual basis that

18  Ms. Gaines' information was, in fact, disclosed, and there's

19  just simply nothing in this complaint to say that.

20          **THE COURT:**  Let me stop you right there and ask you a

21  question.  So if I'm the New York Times in *Nashel*, and

22  there's -- and I know that there's this advertisement, the data

23  card that you say, why in the world would the New York Times or

24  any of the other defendants in these cases allow for this to be

25  out there if they didn't provide data to the data source or the

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 18

1  runner of this advertisement?  I mean why would the New York

2  Times ever allow this to be out there is my first question.

3  And my second question is where else would these people get the

4  information if not from the New York Times or from National

5  Wildlife Federation?  I mean where else does it come from?  And

6  if not from them, then why would they allow this publication to

7  be out there.

8          **MS. RODRIGUEZ:**  So a couple of points on that.  First

9  of all, it assumes that the Defendant knows that it's out

10  there.  So that's not pled, first of all.  So let's start with

11  that fundamental premise.  Second of all, there are multitudes,

12  multitudes of sources for this type of data, and we point out

13  to your Honor that, actually, some of the exhibits that are

14  attached to this complaint show that there is in fact that

15  multitude of sources of information.  There are, for example,

16  information that could come from the subscriber themselves,

17  through surveys that a subscriber says, "Hey, I read the Wall

18  Street Journal.  I read the New York Times.  I like reading,

19  you know, different types of information about outdoor

20  activities."  That's certainly information that exists out

21  there.  There are other types of collection efforts that might

22  become available.

23      So, again, it's an inferential leap that this Court is

24  being asked to make, given those own allegations, given this

25  vast information marketplace that Plaintiffs themselves allege

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 19

1   that is out there.  And so that's, that would be my first

2   response is that it's simply too great of an inferential leap

3   for this court to make, and that's pointed out in the *Nashel*

4   decision, where the court says, "That's just too much, you

5   know, I can't make that inference."

6       There's also pointed out in the *Wheaton versus Apple* case,

7   where the court evaluated that and said, "Look, we can't just

8   assume that that information came with the basis of or with the

9   endorsement of National Wildlife, or any other third party

10  defendant."  And, moreover, your Honor, what matters, again, is

11  disclosure.  So, again, even if a defendant said, "Yeah, go

12  ahead and advertise this," and there were no takers, there's

13  nothing illegal that happened, and so there needs to be a

14  demonstration of disclosure that happened in this time period

15  in order for there to be entitlement to a relief.

16      And a data card that exists out there with or without the

17  Defendants' knowledge is simply not enough to show that

18  Ms. Gaines' information, in particular, was disclosed.  It's

19  not just that any person's information was disclosed, it's not

20  even that Michigan folks' information was disclosed, it was

21  that Ms. Gaines' information was disclosed.  That is the

22  question before your Honor in evaluating the sufficiency of

23  this complaint.

24      I would also, with regard to -- you asked about the *Nashel*

25  case.  If anything, this case is even stronger in voting for

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 20

1    dismissal here because, in the *Nashel* case, there wasn't just a

2    data card, there was also a privacy policy that existed in '15

3    or '16 that told consumers you can opt out of having your

4    information disclosed, and there was also a post relevant time

5    frame marketing study that was published by a third party that

6    said that, in order to come one some marketing strategies, they

7    use an e-mail list of New York Times subscribers, and that was

8    in 2020.  And so there were even more factual enhancements in

9    the New York Times case that, actually -- that the court

10   evaluated beyond just a data card, and the court said, "Look

11   that's still not enough.  What did Mr. *Nashel*, what was the

12   *Nashel* disclosure?  What was Mr. Robinson's disclosure here,"

13   the other named Plaintiff, and there was simply not enough,

14   after two tries in the New York Times case, and it was a case

15   that the plaintiffs elected not to appeal.

16        So when you look at that decision, and when you look at

17   the *Bozung* decision that, again, looks at these data cards and

18   simply finds it's not enough, we would respectfully submit that

19   your Honor find the same, and if you have any --

20        **THE COURT:**  I do have another one.  So if the whole

21   point of the complaint is to put the Defendants on notice of

22   the allegations, notice pleadings, I mean they certainly know

23   what they're alleging.  They're alleging that they disclosed --

24   that they got their information and that they disclosed it,

25   and, certainly, you've been -- your client has been put on

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 21*

1  notice as to what the claim is.  I mean isn't -- why isn't the

2  Plaintiff entitled to discovery to flesh out those -- to depose

3  the Defendant's officers and say, "Did you make any money?  Did

4  you actually sell it?"  I mean she believes that they did

5  because she started getting all of this junk mail.  So she

6  believes she did.  There's -- there's advertisements that say

7  that there's somebody out there that believes they can sell

8  their information for some reason.  I mean don't you think

9  they're entitled to discovery and that you may ultimately

10  prevail on these same types of arguments on an SJ motion, but

11  not a 12(b)(6)?

12         **MS. RODRIGUEZ:**  Absolutely not, your Honor.  They are

13  not entitled to discovery, and for one big reason, because the

14  Supreme Court said they're not.  The Supreme Court has

15  said that a district court must insist on some specificity in

16  pleading before allowing a potentially massive factual

17  controversy to proceed.  That's straight from *Twombly*, your

18  Honor.  The Supreme Court has recognized that discovery is time

19  consuming.  Discovery is expensive.  Discovery is a drain on

20  the resources of defendants, in particular, who are faced with

21  class action lawsuits.  That is, no doubt, a potential risk

22  here, and so allowing discovery in order to flesh out a

23  complaint is simply not allowed, period.  It simply isn't, and

24  it would flip the whole pleading standard on its head and put

25  the burden on a defendant to disprove as opposed to having a

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 22

1  plaintiff come forward with the reasons for entitlement for

2  relief or showing entitlement to relief.

3       And I would also like to briefly address the junk mail

4  point that you brought up.  Your Honor, all she alleges in this

5  case is that she received massive junk mail.  She does not say,

6  "I subscribed to Ranger Rick magazine in XY date."  She doesn't

7  even allege when she subscribed.  But let's say, you know, she

8  says, "I subscribed on XY date and a month later, wouldn't you

9  know it, I started getting a bunch of junk mail that all

10  relates to wildlife stuff."  She doesn't even say that.  Think

11  of all of the other reasons that you can potentially get junk

12  mail.  She's asking this Court to infer, without any factual

13  enhancement why, that junk mail became because of the National

14  Wildlife Federation.  That connection is simply not there, and

15  that's what this court must demand before allowing, among other

16  things, that's what this Court must allow before, you know,

17  allowing discovery to proceed.

18       I mean I understand the inherent desire to just say, "Hey,

19  let's just go figure it out," but that's simply not enough.

20  There has to be a gatekeeping role, and harkening back to how I

21  started, there has to be a gatekeeping role, and that's what

22  we're asking your Honor to invoke before we proceed into this

23  what will undoubtedly be a massive case.  So we thank you, your

24  Honor, for your consideration.  Happy to address any other

25  questions.

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 23*

1      **THE COURT:**  No, I appreciate it, well thought out

2   arguments.  I appreciate your time and the arguments.  So let's

3   turn to Mr. Miller and see what he has to say.

4        Mr. Miller.

5      **MR. MILLER:**  Yes.  Thank you very much, your Honor.

6   Data mining today is very similar to the gold rush of the 19th

7   Century.  Publishers like the National Wildlife Federation take

8   advantage of this multibillion dollar industry.  It's standard

9   industry practice for publishers to rent or disclose subscriber

10  information.  That's one of the ways that these companies make

11  money and she's exactly, your Honor.  We filed about a hundred

12  complaints.  She pejoratively calls them cookie cutters.  I

13  don't think that's fair, but they are all very similar because

14  it's an industry wide practice of doing the same thing.  What

15  would be implausible is if they didn't sell their data, because

16  that's the way they make money.

17      And your Honor had a great question, why not discovery?

18  If what she says is true, you open door to discovery, they'll

19  just say, "We have nothing to produce."  Of course they have

20  stuff to produce, because as soon as the door of discovery is

21  open, we will have clear, unequivocal, overwhelming evidence

22  that they did it, just like what has happened in dozens and

23  dozens of other cases that have settled for millions of

24  dollars.

25      Note, your Honor, what's missing in their motion.  They

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 24*

1   never denied they did it.  They never say they didn't do it.
2   This is a cynical abuse of *Iqbal* and *Twombly* to nitpick the
3   cases of our complaint in the hope that a court will
4   prematurely close the doors of justice before we can get into
5   discovery, when they know all the while their clients have done
6   it.

7        And what I've learned from prosecuting dozens of these
8   cases is that these companies work with data aggregators to
9   create dossiers on American citizens.  They pose a grave threat
10  to privacy.  Your Honor's question was right on point.  How did
11  NextMark -- how did the broker get the data?  Of course they
12  got it from NWF.  There's no other way it gets into the
13  marketplace.  What happens is NWF sells it to multiple data
14  aggregators, data appenders.  It becomes what the Sixth Circuit
15  described as data stew, and that stew becomes more and more
16  valuable, but it only got into that marketplace from NWF
17  because NWF is the entity that disseminated it into the market.

18       The Michigan legislature created the PPPA to protect
19  privacy in reading materials, because what one reads can reveal
20  a great deal about the person's life, and one of the reasons
21  why I think case is even more important than our other cases is
22  because the data card she showed you shows they disclosed
23  information, not just about adults, but children, and, your
24  Honor, I will represent to you that my first subscription was
25  to Ranger Rick magazine as a kid.  My Aunt Louise gave it to

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 25*

1   me, and that's one of the reasons why I love animals to this

2   day, and my wife and I are very involved in a nonprofit to try

3   to save wolves in North America, and a lot of that came from

4   Ranger Rick, but they should not be selling to data appenders

5   and data brokers information about children.

6       Many publishers, like the National Wildlife Federation,

7   have made a business decision to ignore the PPPA.  Our case is

8   a routine and straightforward case to enforce the Michigan

9   statute.  She's right.  Over the last seven years, not

10  two years, seven years, about 100 of these statutory privacy

11  cases have been prosecuted with great success, dramatically

12  improving the privacy rights of citizens.  Most defendants

13  settle these cases without even attempting a motion to dismiss

14  because they know they did it and because the PPPA statute is,

15  essentially, strict liability.

16      The overwhelming majority of motions to dismiss have been

17  denied.  In fact, your Honor, 15 motions to dismiss have been

18  denied.  Plus, a recent report and recommendation from your

19  magistrate, Judge Kim Altman, on the NTBD case, which is

20  pending before your Honor.  I argued that motion.  It was

21  well-briefed.  We had a long oral argument.  Her opinion is

22  very well-reasoned, and I urge your Honor to adopt it because I

23  think Ms. Altman got it exactly right.  In contrast, your

24  Honor, only two courts have granted motions to dismiss in the

25  Michigan district courts, the *Nashel* case from Judge Murphy,

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

1   which I'll talk about more a little bit later, but, as a

2   preview, it's not published, and there was no oral argument.

3   It was wrongly decided, inconsistent with the majority of the

4   cases and easily distinguishable, and the *Christianbook* case,

5   in the Western District was granted without prejudice and

6   almost certainly will be reinstated, because discovery

7   produced, your Honor, only hours before the opinion was

8   released proved the defendant did in fact share private reading

9   information in contravention of the statute.  So we're back

10   before Judge Jarbou to reinstate the case, and I'm confident

11   that she will, and she ruled in our favor on the *Krassick* case.

12   So now as to stating a claim upon which relief can be granted.

13       Your Honor, we all know this is governed by Rule 8.

14   Rule 8 is liberal.  All that's required is a short and

15   plain statement.  The plaintiff is not required to prove her

16   claim with any evidence at this time.  All we must do is allege

17   facts that plausibly suggest a violation of the PPPA.

18       The district court opinion in *Timmerman versus 3M Company*,

19   and that's also the chief judge of the western district, held

20   that the Rule 8 pleading standard was satisfied in a class

21   action where the named plaintiffs simply alleged that they were

22   exposed to purportedly harmful chemicals in drinking water

23   without alleging whether any of those chemicals, in that case,

24   PFAS, had been detected in their drinking water and, if so, how

25   much.

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 27

1       The point is Rule 8 is a very low bar, and we leap over
2   it.  The first amended complaint alleges that during the
3   relevant pre July 31, 2016 time period, NWF continuously
4   disclosed its entire digital customer database to various third
5   parties, including data appenders, data aggregators, list
6   brokers, marketing companies and many others.  First amended
7   complaint Paragraphs 5 and 7.

8       Moreover, the first amended complaint further alleges that
9   NWF's entire customer database has been advertised by NWF for
10  rent, sale, and exchange on the open market since as far back
11  as the beginning of 2015 and throughout the relevant pre
12  July 31, 2016 time period, and that over the same time, NWF in
13  fact, routinely disclosed the entire customer database to
14  various third parties, including data appenders, data
15  aggregators.  Your Honor, that's our operative complaint at
16  Paragraphs 1, 5, 7, 11, 43 to 47, 62 to 65.

17      And here's the key, your Honor, that's the heart of our
18  complaint, not one example of evidence.  We don't rest our case
19  on one data card.  We're not required to plead any evidence at
20  this stage of the game.  All we're required to do is allege the
21  factual basis for our case, which is presumed to be true.  We
22  do go further, and we plead some of our anticipated proof, that
23  data card, but that's not required under Rule 8, and that is
24  where the Defense and two courts out of 18, just 2, went awry
25  because they get caught up in nitpicking the evidence before

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 28

1  any discovery takes place, in contravention of Rule 8, and

2  misapplying *Twombly* and *Iqbal*, which are irrelevant, where the

3  factual allegations mirror the statutory requirements.  We are

4  entitled to the presumption what we plead is true.  *Iqbal* and

5  *Twombly* only come into play when the legal conclusions are

6  subject to a plausibility determination.

7      Let me give you an example, your Honor.  Take a complex

8  antitrust case, and the plaintiff says, "Five different

9  competitors are charging the same prices."  A court could very

10 well say, "We accept that as true, counsel, but that doesn't

11 mean that there was an unlawful conspiracy to fix the prices.

12 Your allegations aren't enough.  They're not plausible because

13 you don't have any allegations of an unlawful agreement."

14     What we have is clear, plain, and simple.  It's binary.

15 They transferred the data or they didn't.  We allege that they

16 did.  That's no different than an auto-neg case where the

17 plaintiff alleges the defendant ran a red light.  That's all

18 they have to say.  The defense can't say, "You've got to

19 dismiss that case, judge, because they didn't attach a

20 photograph of the defendant running through the red light."

21 We're not required to give any evidence at this staple of the

22 case.

23     So there are at least 15 PPPA district court opinions and

24 one magistrate report and recommendation denying motions to

25 dismiss, and some those motions address standing, but standing

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 29*

1  is a failure to state a claim.  If you don't -- if you do not

2  state a claim, you don't have standing.  So all of these

3  opinions clearly support that these cases state a claim.  We

4  cited five such published opinions in our brief at Page 14, but

5  there are also five recent opinions I'd like to call to your

6  attention.

7      Most recently, March 30, 2023, Judge Kumar issued a

8  decision denying the defendant's motion to dismiss in *Batts v*

9  *Gannett*.  I argued that motion, too.  The defense relied

10  heavily on *Nashel*.  They had briefing on *Nashel*.  Their focus

11  of their oral argument was on *Nashel*, and Judge Kumar

12  appropriately rejected it, as did your Magistrate Judge Altman.

13  In *Pratt*, Judge Ludington denied a similar motion, so did Judge

14  Lawson in the *Hall* case, and Judge Jarbou in the *Krassick* case.

15      So the Defense safely moves to dismiss saying that it's

16  not plausible they were renting or selling the subscriber

17  lists, when they know they were doing it, as it's an industry

18  practice to do it, and they're desperate to slam shut the door

19  of justice and to deprive us of the essential tool of discovery

20  to prove our case.  If they're telling you the truth, your

21  Honor, they don't have any discovery.  They want to shut the

22  Pandora's box closed before we get our fair opportunity, and

23  that's directly contrary to the law under Rule 8 and any

24  semblance of justice.  Never do they deny that their client

25  disclosed it.  This is a great example of *Twombly* and *Iqbal*

*22-cv-11173; Gaines v. National Wildlife Federation*

being taken out of context beyond its intended purpose to
destroy meritorious cases before they're able to get off the
ground.

Now, we substantiate our allegations but we don't have to
do it.  We didn't have to provide a data card, but the data
card certainly increases the credibility of our case, and the
data card is attached as Exhibit 2, and the crucial language,
which was also seized upon by Magistrate Judge Altman, is that
the data is cumulative of all subscribers, with, quote, Counts
through 3-1-2022.  So that means it goes from the past to the
future.

Her argument that that's the heart of our case is false.
The heart of our case are the allegations that they did.  This
is one prediscovery item of proof that we are not even required
to do, and it's real -- and NextMark is the broker.  Your
Honor's question is right on point.  If they didn't release the
information, how on earth did the broker get it?  Of course
they did.  They release it to multiple sources, to data
appenders, to data aggregators, and that is what discovery will
reveal.

They also completely ignore that we allege there was a
similar card right in the heart of the pre July 2016 class
period, and once you order discovery, we'll get it from them,
and they don't deny that that card existed and makes our case
clearly plausible.

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 31

1    Your Honor, I would now like to go to their reliance on

2  the *Christianbook* case.  What I would say about *Christianbook*

3  is that's going to support us, because what happened in

4  *Christianbook*, your Honor, is Judge Jarbou let us engage in

5  discovery at the same time she considered the motion to

6  dismiss.  What happened?  Just hours before she released her

7  opinion, we got just the tip of the iceberg of discovery, which

8  proved that they did it.  See we're back in front of

9  Judge Jarbou saying, "Judge, now we have the proof."  We didn't

10 have to have the proof at the time we filed it, but we got the

11 discovery just hours before she released her opinion, which was

12 without prejudice, without oral argument, and she got it right

13 in *Krassick*, I think, and she's a good judge.  I respect her

14 very much, but she went too fast on *Christianbook*, and we got

15 the goods just hours before she released her opinion.

16     Now, I want to talk about a little bit more about *Nashel*.

17 *Nashel* was also decided without oral argument, is unpublished

18 and nonbinding.  I respect Judge Murphy.  He comes from a

19 certain judicial thinking, that I respect it.  It's very --

20 let's say it's from a different perspective, and I don't mean

21 to disrespect Judge Murphy at all, but his opinion is an

22 outlier, because selling personal purchase information is

23 routine, widespread, systematic.  That's why we have 100 cases.

24 That's how the publishers make their money.  What's implausible

25 is that they didn't sell their data.

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 32*

1    But as a threshold matter, the court in *Nashel* applied the

2    wrong legal standard.  *Nashel* improperly analyzed the

3    plausibility of the complaint's factual allegations.

4    Judge Murphy said that the data cards make the complaint's

5    allegations merely possible rather than plausible.  That's

6    plain error.  On a motion to dismiss pursuant to Rule 12(b)(6),

7    the question is not whether the complaint factual's allegations

8    are plausible.  The complaint's allegations must be accepted as

9    true.  The question is whether those allegations, viewed

10   together, and all reasonable inferences drawn in the

11   plaintiff's favor, are plausibly suggestive of a claim for

12   relief.

13       The Sixth Circuit held in the *MSU* case in our brief that

14   in deciding a Rule 12(b)(6) motion, the court must accept all

15   well-pleaded allegations in the complaint as true and consider

16   the factual allegations in the complaint to determine if they

17   plausibly suggest an entitlement to relief.

18       In *Nashel*, Judge Murphy recast allegations, that were

19   plainly factual in nature, as legal conclusions, merely because

20   the underlying conduct happened to give rise to a PPPA claim.

21   Again, your Honor, it's no different than alleging in an

22   auto-neg case that a defendant ran a red light.  The question

23   is the plausibility of the legal claims, not the persuasiveness

24   of plaintiff's factual allegations.  As the Sixth Circuit held

25   in *Mediacom* that the plaintiffs are not required to prove that

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 33

1    the allegations are persuasive, only plausible.  *Nashel* is

2    easily distinguishable on its facts.  In *Nashel*, the plaintiffs

3    rely on a pre class period data cards, 2007 and 2008, which

4    were eight years before the class period.

5        We don't have that same timing issue in our case because,

6    in our case, the screenshot includes data collected through

7    2022.  The data card is cumulative, and it's not limited, and,

8    of course, what the Defense would argue is, well, we can't

9    prove it's after 3-1-2022, that's not plausible.  Well, of

10   course, that wouldn't be true either.  I'm sure they're doing

11   it to this day.  It just happens to be when you're able to find

12   a data card on the web because we don't have access to

13   discovery, and we specifically alleged the same or similar data

14   card was used in Paragraph 3 of our complaint.

15       I also want to point out, your Honor, that she wrongfully

16   says that our complaint is solely based upon information and

17   belief.  Not true.  What our complaint says, and I'll quote,

18   "Plaintiff, Sherry Gaines, individually on behalf of all others

19   similarly situated, makes the following allegations pursuant to

20   the investigation of her counsel and based upon information and

21   belief, except as to allegations specifically pertaining to

22   herself and her counsel which are based on personal knowledge."

23       And I'll represent to the Court that the heart of our

24   complaint is based upon seven years of experience in litigating

25   more than 100 of these cases, and there is no law that says

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 34

1 that at the initial pleading stage that information and belief

2 cannot be used whatsoever.

3      Additionally, your Honor, and it's an important point, and

4 your Honor observed this.  It's not a coincidence that our

5 client got an uptick in junk mail after she subscribed to NWF.

6 That clearly enhances the plausibility of her claims.

7      The last case to rely on is *Wheaton V Apple*.  That's out

8 of district.  It's a California case, and it's easily

9 distinguishable.  First, the first amended complaint here

10 contains many factual allegations concerning disclosures made

11 by a magazine publisher pursuant to an established industry

12 wide practice, not an isolated instance involving a technology

13 company, Apple.  We have a long history of industry practice on

14 our side.  Second, in *Wheaton*, the case involves music on

15 phones.  There was no way to establish that the music came from

16 Apple because of the wide prevalence of music sharing devices

17 on applications.

18      Here, the private reading information can only come from

19 the magazine publisher, and while we're on the topic again of

20 that data card, she showed you a portion of the card but not

21 all of the card.  If you look below the portion that she read

22 to you, it shows that the first and last name of the subscriber

23 is disclosed.  That's exactly the point.  That's the violation.

24 So what happens is they disclose the names of people who

25 subscribe to Ranger Rick, including children.  So now these

*22-cv-11173; Gaines v. National Wildlife Federation*

1  advertisers know how to target families.  Oh, these people are

2  interested in animals, maybe we can sell them ammunition or

3  guns or other stuff that relates to animals, which is their

4  personal private reading information that these data appenders

5  have no right to whatsoever.

6      And I'd like to now go -- so what I would sum up on the

7  first part of their motion for failure to state a claim upon

8  relief.  That has been granted.  The case law is 16 to 2 in

9  district courts in Michigan in favor of allowing these cases to

10  proceed, and the 16 cases are well-reasoned and correctly

11  applied Rule 8.  As to the statute of limitations, every single

12  court, your Honor, in the Eastern District and Western District

13  has rejected the Defense argument.  There are seven district

14  court opinions and one magistrate judge's report, again, your

15  magistrate judge on the *Brisco* and *DTB* case have recommended

16  against the Defendant's argument, which is unanimously

17  rejected, two opinions by Judge Lawson in *Hall*, Judge Jarbou in

18  *Krassick*, Judge Kumar in *Gannett*, Judge Ludington in *Pratt*, and

19  even Judge Murphy in *Nashel* found that the six-year statute

20  applies, not the three-year statute.  The cases are unanimous.

21      Now, they attempt to rely on the *Dabish* case, which is an

22  unpublished case in the Sixth Circuit that doesn't even cite

23  the published opinion in the *Palmer Park* case, which is

24  controlling, and all the courts that I cited to you rejected

25  the Defense argument on applying the *Dabish* case.  So all eight

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 36

1   opinions and seven cases, unanimous authority are all

2   well-reasoned, and, your Honor, they're firmly supported by

3   Sixth Circuit controlling authority in the published opinion of

4   *Palmer Park Square* at 878 F. 3rd 530, as well as by the

5   Michigan Court of Appeals published opinion in *DiPonio v Rosati*

6   631 NW 2d 59 hold that the six-year statute applies under

7   circumstances where the statute itself, like here, does not

8   provide a limitation period.

9         So your Honor, the way I would sum this up is this is a

10  clear case whereby we're entitled to discovery.  The Defense

11  will never be satisfied that we've pled a plausible claim.  The

12  Defense has never denied that their client did it.  They can't

13  deny that their client did it, and if they're right, this

14  discovery will -- this case will be over very quickly, because

15  when we start discovery, they will say, "We have none."  If

16  they are able to certify to us that there's no discovery, that

17  there's no evidence, their witnesses swear they didn't do it --

18  I say it's a one-in-a-million chance -- of course we

19  voluntarily dismiss the case, but *Iqbal* and *Twombly* weren't

20  designed to destroy cases before they get off the ground and

21  are meritorious and illegally transfer data of our children.  I

22  ask your Honor to deny the motion to dismiss, and I'm here to

23  answer any questions you might have.

24          **THE COURT:**  When you refer to the bottom corner of

25  the publication, your data card, it says, "Ranger Rick

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 37

1   Masterfile subscriber names are provided title slugged only,

2   'to the blank family.'"

3        "Gift giver names are provided title slugged and first

4   name/last name."

5        So how do you know that your Plaintiff -- I think

6   Ms.  Rodriguez's point is how do you take this data card and

7   have you sufficient -- it's not how do you show, it's a

8   question have you sufficiently pled whether or not your

9   Plaintiff, Ms. Gaines, is actually one of the people included

10  in the total universe?  How do we know she's actually one of

11  the people who was a gift giver whose name was disclosed?  How

12  do you -- have you pled that?

13           **MR. MILLER:**  So we've definitely pled, not that she's

14  a gift giver, we pled that her information was disclosed.  This

15  is just an example from one isolated piece of evidence that we

16  were able to get on the web that shows that they disclosed gift

17  giver names, which is even worse.  This means they're not just

18  disclosing the names of subscribers, they're disclosing the

19  names of the gift givers which are, obviously, people who are

20  also interested in wildlife.  Like I said to your Honor, it was

21  my Aunt Louise, my next-door neighbor, when I was about eight

22  years old, who loved wildlife, gifted me a subscription to

23  Ranger Rick.  So this example shows that it's even worse.

24        What we rely on is not the data card.  The data card is

25  corroboration.  It's the type of discovery we expect to find,

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 38

1  but it's not the heart of our case.  Our heart of our case is
2  the allegations that that they did it based upon industry
3  practice.  That's all we have to allege is that they did it,
4  just like all we have to allege is the defendant ran through
5  the red light.  It's for discovery to show the full extent of
6  what they did, but this does corroborate what we're saying in
7  the complaint.  It does show that brokers are selling these
8  lists with subscribers' names on it, including children.  So
9  this is supportive of our case.  It aids in proving the
10  plausibility, but I would submit, your Honor, we didn't even
11  have to attach this card.  Our case would easily muster the
12  Rule 8 shortened claim statement standard without it.  This
13  simply enhances it.

14          **THE COURT:**  All right.  Thank you, Mr. Miller.

15      **MR. MILLER:**  Thank you very much your Honor.

16      **THE COURT:**  Rebuttal argument, Ms. Rodriguez.

17      **MS. RODRIGUEZ:**  Thank you, your Honor.  Let me
18  address a number of things that Mr. Miller indicated.  First of
19  all, it was very curious that we heard a lot about industry
20  practice, a lot about the other cases that Mr. Miller has
21  worked on.  What we did not hear was anything about this case
22  and about Ms. Gaines' information.  If this Court were to hold
23  that industry practice is sufficient to state a claim for
24  improper disclosure under the Michigan and PPPA, that would be
25  absolutely the wrong pleading standard.  The Supreme Court and

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 39

1  the Sixth Circuit and many other federal courts have made it

2  clear that you must show entitlement to relief through the

3  pleading.  It's not merely everyone else did it, therefore, you

4  must have done it too, which is effectively what Mr. Miller is

5  saying.  That is insufficient, improper and should not be

6  adopted by this court.

7        Second of all, this is not as simple as a red light type

8  of situation because this is not black and white or red and

9  green.  This is a nuanced statute that does not prohibit just

10 disclosure, period.  As I laid out for your Honor, there are

11 certain elements that need to be pled in order for an improper

12 disclosure to have taken place, and there is a certain type of

13 information that is prohibited, specifically, the identity of

14 the purchaser of the information.

15       Here, Ms. Gaines alleges she was a subscriber, and

16 harkening back to the data card, if we're going to go back and

17 look at it, the subscriber name was not disclosed.  It was the

18 family information, and I take great offense to Mr. Miller's --

19 on behalf of my client, Mr. Miller's allegation about

20 disclosing information about children in some improper way.  I

21 do take great offense to that, and I would object to that type

22 of baseless statement, which is absolutely not pled in that

23 complaint and is used solely as rhetoric to ignite the

24 inflammatory statement such as that.  So I would object to

25 that.

        *22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 40

1    And as someone who has in fact defended a number of these

2    cases, I can tell you, and mark my words, that the type of

3    information that goes out in discovery will cause these

4    Plaintiffs to morph and twist their allegations and their

5    theories and claims of the case to somehow state a claim, even

6    if it turns out, as has been the case in a number of other

7    cases, that there are meritorious defenses to what is pled, and

8    so what Plaintiffs are relying on here is simply an industry

9    standard without any specifics as to our named Plaintiff.

10    Moreover, counsel has misrepresented to you the record

11    with regard to motion to dismiss on the sufficiency of the

12    pleadings.  The record that he cited to you was about other

13    types of motions to dismiss.  There have been a limited number

14    of decisions on the motions to dismiss the sufficiency of the

15    pleading under 12(b)(6), not 12 (b)(1).  Counsel is absolutely

16    wrong that a 12 (b)(1) is the same thing on its own as a

17    12(b)(6) standard of pleading.  Those are two different

18    standards, two different issues, and what we have right now is

19    the majority of cases showing that the types of allegations

20    that have been pled here in these industry standard types of

21    complaints are sufficient.  The courts have held that they are

22    not.  That is the majority position, not the other way around,

23    your Honor, and with all due respect to the magistrate in

24    issuing the *Brisco* report and recommendation, that decision

25    simply says that they find the *Horton* case, which was issued a

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

Page 41

1  few years ago, to be more persuasive without giving anything

2  further, and a more exacting and more rigorous analysis is

3  required.

4          Furthermore, the *Horton* case is kind of interesting that

5  the Plaintiffs counsel has cited, you know, discovery and what

6  it shows, because the *Horton* case if we're going to go there,

7  the *Horton* case actually showed that there was not any

8  disclosures to NextMark at the summary judgment stage, but,

9  nonetheless, the court -- the defendants had to go through this

10  whole procedure through discovery, through the time-consuming

11  process, through the expensive process that it is, only to find

12  out that the basis the court allowed the complaint to proceed

13  on, this purported disclosure to NextMark, the agency that's

14  hosting this data card, never happened.

15          So let's be real clear about what's going on here, despite

16  Mr. Powell's [*sic*] statement that this is about advocating for

17  the privacy rights of consumers, these are lawyer-driven

18  lawsuits.  These are lawsuits driven by the statutory penalty

19  that is baked in here and the attorney's fees that come along

20  with that.  Ms. Gaines did not come forward in 2016 because she

21  felt like she actually did notice an influx.  She came forward

22  in 2022 because the statute of limitations, under their time

23  period, was sunsetting and this was the last time to cash in on

24  these types of cases.

25          And yes, there have been settlements.  That's absolutely

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 42*

1   true.  Settlements do not mean liability.  Defendants settle

2   for a number reasons, and in cases like this, where there is

3   that statutory penalty and there is limited case law on the

4   substantive defenses, when a business looks at that and tries

5   to evaluate the risk and tries to evaluate what it would cost

6   to litigate this, sometimes, yes, those decisions are made, but

7   that is not an indication, and this Court should not take in

8   any way, despite Mr. Powell's statements and his rhetoric, to

9   mean that there is absolutely it's open and shut red light

10  green light type of case because it's far from that.

11      And this Court needs to exercise its gatekeeper role to

12  avoid launching into that massive discovery that has plagued an

13  already struggling publishing industry, and nonprofit

14  organizations like mine, that are trying to do what Mr. Powell

15  has said, engage individuals, engage families, engage children

16  in important are wildlife conservation efforts, and these types

17  of cases threaten the very mission and the very ability for

18  organizations to do exactly that on things that are not, per

19  se, illegal.  Let's keep that in mind.

20      So to briefly, finally, address the statute of limitations

21  point.  I didn't really bring that up in my opening remarks,

22  but I fully acknowledge, your Honor, I fully acknowledge other

23  courts have consistently gone the other way and found that a

24  six-year statute of limitation applies, even though counsel has

25  consistently taken the position that three years applies back

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 43*

1  in 2019, and back in 2016 when these cases were filing.  They

2  are now taking a position, of course, that it's a six year.  So

3  be it.

4      But we would ask this court to take a strong look at that

5  *Palmer Park* case.  That *Palmer Park* case is unique from these

6  situations here, because, what we have here, is not where

7  there's a potential for a statutory statute of limitations

8  that's baked into the statute of limitations versus something

9  else, like the *Palmer Park* case was deciding.  What we have

10 here is a balancing that needs to happen between a more

11 specific statute of limitations with regard to personal injury

12 actions and the more general statute of limitations that is the

13 catchall, the six-year catchall, and Michigan law is clear that

14 when there is a potential for a more specific statute of

15 limitation to apply, the Court should adopt that one.

16     That kind of issue, that kind of interplay between the

17 personal injury actions and a catchall six year was not in

18 place in *Palmer Park*.  It was a statutory interest kind of case

19 on an insurance contract, right.  So these are only different

20 types of cases, and we would submit that this Court look at the

21 issue anew and, with all due respect to the prior decisions,

22 really look at that in the context of what we're representing

23 here, but, again, the Court need not even go there if it finds

24 that the pleading is deficient, as many of this Court's

25 colleagues have, as well as the chief judge in the Western

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 44*

1   District.  Thank you, your Honor, for your time and your

2   consideration, and I'm happy to answer any additional

3   questions.

4          **THE COURT:**  I actually have one more question and

5   limit this question to both of you:  Do you need me to

6   address -- does it matter -- the Covid tolling issue?

7          **MS. RODRIGUEZ:**  No, you do not need to Covid tolling

8   issue, and we ask this Court to exercise judicial restraint in

9   not doing so.  The reason for that is because if you find the

10  six-year statute of limitation applies, then the case --

11  complaint is timely.  There's no need to invoke Covid tolling

12  to make it timely, which has been the case in other matters

13  that were filed after July 31st, 2022.  The Plaintiffs needed

14  Covid tolling in order to make the case timely, but this case,

15  you do not need to do so, and so the matter of whether or not

16  the Covid tolling applies to the class period is an important

17  determination but it's one that we do not need to reach here in

18  order to address the sufficiency of the -- or the timeliness of

19  the complaint, and it's one that we would ask the Court not to

20  address, unless -- first of all, if the Court finds the case

21  should continue, which we don't think it should, and, second of

22  all, without the full briefing from the parties, because this

23  is a complicated and nuanced question that really has not been

24  addressed to date.

25         **THE COURT:**  Mr. Miller, if you would address just

*22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 45*

1   that tolling issue?

2         **MR. MILLER:**  I agree with her on that point.

3     I would ask permission for one minute.

4         **THE COURT:**  Sure.

5         **MR. MILLER:**  One minute.  Thank you.

6     One, your Honor, we're not just relying on industry

7   practice that supports the plausibility of our allegations.

8   We're relying on Rule 8, that our allegations are deemed true

9   at this stage of the complaint, particularly Paragraphs 5 and

10  7, as well as 1, 11, 43 to 47, 62 to 65, they're deemed true.

11  We get to discovery.  It's that simple.

12    Two, as to Rule 12(b)(1), in order to survive a 12(b)(1)

13  motion and jurisdiction, we have to state a claim upon which

14  relief can be granted, otherwise, there is no case or

15  controversy.  So those cases are on point, and, last, I'll talk

16  about the *GameStop* case, because that's one case I ask your

17  Honor to read.  It's extremely well-reasoned by Judge Quist.

18  It's right on point, and it shows why this motion should be

19  denied, just like Judge Altman's opinion I think is very

20  well-reasoned.

21    Now, she asserts that discovery was a dry well in

22  *GameStop*.  That is not fair.  The case settled.  There was no

23  Rule 56 decision, and all that's before you now is do we have

24  enough to get by to open the door to discovery.  *GameStop* says

25  yes, as does the overwhelming majority of cases decided by

     *22-cv-11173; Gaines v. National Wildlife Federation*

*Motion Hearing*
*Wednesday, April 26, 2023*

*Page 46*

1  district courts.  Thank you for the minute.

2          **THE COURT:**  Ms. Rodriguez, I'm assuming you disagree

3  with everything Mr. Miller said for the reasons stated.

4          **MS. RODRIGUEZ:**  Absolutely, your Honor.  We ask that

5  you grant our motion.

6          **THE COURT:**  So you don't need another minute, right?

7          **MS. RODRIGUEZ:**  I will take as many minutes as you

8  give me, your Honor, but I --

9          **THE COURT:**  You're good --

10          **MS. RODRIGUEZ:**  I respect your time, and I respect

11  your orders.

12          **THE COURT:**  I appreciate your argument.  Well-done to

13  both of you, and we will issue a written opinion.  Thank you.

14  Have a nice day.  Thanks, Andrea, for your help as well.

15      (Proceedings concluded 3:20 p.m.)

16                          - - -

17              **C E R T I F I C A T I O N**

18          I, Andrea E. Wabeke, official court reporter for
   the United States District Court appointed by the provisions of
19  Title 28, United States Code, Section 753, do hereby certify
   that the foregoing is a correct transcript of the proceedings
20  in the above-entitled cause on the date hereinbefore set forth.
   I do further certify that the foregoing transcript has been
21  prepared by me or under my direction.
   /s/Andrea E. Wabeke                        May 9, 2022
22  Official Court Reporter                    Date
   RMR, CRR, CSR
23                          - - -

24

25

           *22-cv-11173; Gaines v. National Wildlife Federation*